**Fred HAYS, Plaintiff–Appellant,**

v.

**CITY OF PAULS VALLEY, State of Oklahoma, a municipal corporation, Defendant–Appellee.**

**No. 94–6389.**

United States Court of Appeals, Tenth Circuit.

Jan. 23, 1996.

Jack R. Durland, Jr., Durland & Durland, Oklahoma City, Oklahoma, for appellant.

Robert S. Lafferrandre, Pierce, Couch, Hendrickson, Baysinger & Green, Oklahoma City, Oklahoma, for appellee.

Before TACHA, McWILLIAMS and HENRY, Circuit Judges.

TACHA, Circuit Judge.

Fred Hays sued his former employer, the City of Pauls Valley, alleging willful violation of the Fair Labor Standards Act (FLSA), wrongful discharge, and conversion. After granting summary judgment in favor of the City on the wrongful discharge claim and a portion of the conversion claim, the district court held a jury trial on the FLSA claim and remaining conversion claim. The jury found for the City on the FLSA claim and for Hays on the conversion claim. Hays now appeals the grant of summary judgment on the wrongful discharge and conversion claims, and the jury's verdict on the FLSA issue. We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and affirm.

## BACKGROUND

Hays was Golf Course Manager at the Pauls Valley Municipal Golf Course from 1984 to 1992. In 1990, Hays and the City entered into two agreements, the "Golf Course Manager Employment Contract" and the "Independent Contractor Operation of Golf Course" contract, which reduced the parties' previous oral understanding to writing. Under the Golf Course Manager Employment Contract, Hays agreed to be at the golf course five days a week during regular business hours and to "devote his full time and best efforts to his employment as golf course manager." He also agreed to operate a pro shop in the golf course clubhouse; to keep financial records and collect all golf course fees; to deliver golf course fees to the city manager once a week in the winter and twice a week in the summer; to attend golf course board meetings; and to handle general management of the golf course, including supervision of employees and enforcement of golf course rules. Under the Independent Contractor agreement, Hays agreed to keep the golf course open on weekends, holidays, and after regular business hours. Hays's total salary under the two contracts was $24,000 per year. He also received all profits from sales at the pro shop.

Either party could terminate the Golf Course Manager Contract on sixty days written notice. The City could terminate the contract if Hays became unfit or incapacitated or if he failed to perform his obligations. Hays could terminate the contract if, for any reason, he decided that termination was in his best interest. The Independent Contractor agreement could be terminated for any reason by either party on thirty days written notice.

On August 4, 1992, Pauls Valley City Manager John Haynes wrote Hays to notify him that the City wished to terminate the contracts. The City contended that Hays had breached four parts of the Golf Course Manager Contract. Haynes stated that because of Hays's breach, the City had decided to renegotiate both contracts. On September 24, Haynes wrote Hays to inform him that the City would not renegotiate Hays's contracts and that he would be permanently discharged on October 4, sixty days from the date of the earlier letter.

Hays and his wife spent his last Sunday of work in the clubhouse, creating an inventory of the items in the pro shop. Sometime after they left that evening, the City changed the locks to the clubhouse. The next day Haynes, the City Manager, opened the clubhouse and sold crackers, candy bars, and golf balls from the pro shop.

Hays offered to sell all of the merchandise in the pro shop to the City for $10,026.39. The City rejected Hays's offer, but said that it would be willing to purchase the goods for $6,000. On October 9, Haynes wrote to Hays, stating that if Hays refused the City's offer then he could pick up his merchandise from the clubhouse any time Monday through Friday from 8:00 A.M. to 5:00 P.M. Hays rejected the City's offer but failed to remove his merchandise from the clubhouse. Later, a bank repossessed the goods as collateral for a loan on which Hays had defaulted. Hays regained possession of the merchandise after he paid off the loan.

Hays filed this suit against the City in August 1993. The complaint alleged that the City willfully violated the FLSA, 29 U.S.C. § 207, by failing to pay Hays one and one-half times his usual salary for hours he worked in excess of 40 hours per week; that Hays's discharge was wrongful and a breach of his contracts with the City; and that by changing the locks at the clubhouse, the City exercised dominion over the merchandise in the pro shop and thus wrongfully converted Hays's property.

The district court granted summary judgment in the City's favor on the wrongful discharge claim on the ground that Hays was an at-will employee and could be terminated with or without cause at any time. The court also granted summary judgment for the City on part of the conversion claim, stating that Hays's failure to retrieve his property from the clubhouse constituted abandonment.

The court held a jury trial on the FLSA claim and the surviving portion of the conversion claim. In a general verdict, the jury found that while the City had not violated the FLSA, it had converted Hays's property, and awarded Hays $542 in compensation for the goods that the City sold from the pro shop. Hays filed a motion for judgment notwithstanding the verdict (JNOV) or for a new trial. The district court denied the motion, and this appeal followed.

## DISCUSSION

Hays maintains on appeal that the district court erred in denying his motion for JNOV or a new trial. He argues that (1) the golf course did not qualify as a recreational establishment exempt from FLSA; (2) he did not qualify as an executive exempt from FLSA; and (3) he did not qualify as an administrator exempt from FLSA. Hays further argues that the district court erred in instructing the jury on the recreational exemption and in failing to instruct the jury on the working foreman provision. Finally, Hays contends that the district court erred in granting summary judgment on the wrongful discharge claim and part of the conversion claim.

■■■■ We review the district court's denial of a motion for JNOV de novo. *Federal Deposit Ins. Corp. v. United Pac. Ins. Co.,* 20 F.3d 1070, 1079 (10th Cir.1994). However, "[w]e may find error in the denial of such a motion only if the evidence points but one way and is susceptible to no reasonable inferences supporting the party opposing the motion...." *Id.* (internal quotation marks omitted). We review the denial of a motion for a new trial for abuse of discretion. *Sheets v. Salt Lake County,* 45 F.3d 1383, 1390 (10th Cir.1995). We also review district court decisions regarding jury instructions for an abuse of discretion. *Green v. Denver & Rio Grande W.R.R. Co.,* 59 F.3d 1029, 1034 (10th Cir.1995). In doing so, we are mindful that "[i]nstructions must be considered as a whole; we will not reverse unless any errors are prejudicial." *Id.*

The FLSA requires employers to pay employees at least one and one-half times their regular pay for hours worked in excess of forty hours per week. 29 U.S.C. § 207(a). However, the statute exempts employers operating recreational establishments, 29 U.S.C. § 213(a)(3), and employees in bona fide executive or administrative capacities, 29 U.S.C. § 213(a)(1). At trial, the City argued both that the golf course was an exempt recreational establishment and that Hays qualified as an exempt executive and administrator. Hays contends on appeal that none of these FLSA exemptions apply in this case.

■■■■ The defendant bears the burden of proving that an employee falls within a FLSA exemption. *Corning Glass Works v. Brennan,* 417 U.S. 188, 196–97, 94 S.Ct. 2223, 2229, 41 L.Ed.2d 1 (1974); *Department of*

*Labor v. City of Sapulpa*, 30 F.3d 1285, 1287 (10th Cir.1994). An employee must fit "plainly and unmistakenly within the exemption's terms," and FLSA exemptions are to be narrowly construed. *Aaron v. City of Wichita*, 54 F.3d 652, 657 (10th Cir.) (internal quotation marks omitted), *cert. denied*, —— U.S. ——, 116 S.Ct. 419, 133 L.Ed.2d 336 (1995). Hays argues that he was entitled to a JNOV or a new trial because the City did not meet its burden of proof under the FLSA. Hays also contends that the City did not present enough evidence to warrant instructions on the recreational establishment exemption.

Because the jury returned a general verdict, we review both whether the golf course qualified for the recreational establishment exemption and whether Hays qualified for the executive or administrative exemption. An employer qualifies as a recreational establishment if "(A) it does not operate for more than seven months in any calendar year, or (B) during the preceding calendar year, its average receipts for any six months of such year were not more than 33⅓ per centum of its average receipts for the other six months of such year...." 29 U.S.C. § 213(a)(3). Since the Pauls Valley Golf Course operated year round, it qualified for the exemption only if its receipts for half of the year were equal to or less than one-third of its receipts for the rest of the year.

■ After reviewing the record, we conclude that the City satisfied the requirements of the recreational establishment exemption. The City produced substantial evidence for the jury to conclude that in every relevant year, the golf course's average monthly receipts for the slowest six months were substantially less than one-third of the average monthly receipts for the busiest six months. The City collected most of its golf course dues in May, June, and July. Consequently, receipts for those months are substantially higher than receipts for the rest of the year.

Hays argues that the City should have prorated the dues receipts over the full year. However, nothing in the statute or regulations requires that dues be prorated. Hays also asserts, based on an opinion letter from the Wage–Hour Administrator, that the golf course could not qualify as a recreational establishment because it was supported in part by city taxes. Opinion Letter of the Wage–Hour Administrator No. 1592, Labor L.Rep. (CCH) ¶ 31,935 (Sept. 27, 1985). Hays's reliance on the opinion letter is misplaced, however, because the letter discusses an establishment that had no private receipts and was "wholly or primarily" supported by tax funds. By contrast, the Pauls Valley Golf Course had substantial private receipts. Accordingly, the golf course qualified as an exempt recreational establishment. Thus the district court did not err in instructing the jury on the recreational establishment exemption or in denying the motion for a JNOV or a new trial.

We next review whether Hays qualified for the executive exemption. An employee qualifies as an exempt executive if he satisfies one of two tests in the FLSA regulations, the long test or the short test. The long test states that an executive is an employee:

(a) Whose primary duty consists of the management of the enterprise in which he is employed or of a customarily recognized department or subdivision thereof; and

(b) Who customarily and regularly directs the work of two or more other employees therein; and

(c) Who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring or firing and as to the advancement and promotion or any other change of status of other employees will be given particular weight; and

(d) Who customarily and regularly exercises discretionary powers; and

(e) Who does not devote more than 20 percent ... of his hours of work in the workweek to activities which are not directly and closely related to the performance of the work described in paragraphs (a) through (d) of this section ...; and

(f) Who is compensated for his services on a salary basis at a rate of not less than $155 per week....

29 C.F.R. § 541.1.

The short test applies to employees earning more than $250 per week. An employee

satisfies the short test if her "primary duty" is management and includes the customary and regular supervision of two or more full-time employees. 29 C.F.R. § 541.1(f). An employee who fulfills these requirements is deemed to have met all of the requirements of the long test and thus "it is not necessary to test that employee's qualifications in detail" under that test. 29 C.F.R. § 541.119.

Since Hays earned $461.54 per week, we apply the short test. In order to apply the short test, we must review the meaning of the words "primary duty". Whether an employee's primary duty is management is a fact-based inquiry guided in part by the amount of time spent on management duties. 29 C.F.R. § 541.103; *Department of Labor v. City of Sapulpa*, 30 F.3d 1285, 1287 (10th Cir.1994). Primary duty usually means "the major part, or over 50 percent, of the employee's time." 29 C.F.R. § 541.103. However, "[t]ime alone ... is not the sole test." *Id.* When an employee spends less than 50 percent of his time on management, four other factors should be considered: "[1] the relative importance of the managerial duties as compared with other types of duties, [2] the frequency with which the employee exercises discretionary powers, [3] his relative freedom from supervision and [4] the relationship between his salary and the wages paid other employees for the kind of nonexempt work performed by the supervisor." *Id.; accord City of Sapulpa*, 30 F.3d at 1287. Thus an employee may spend more than 50 percent of his time on nonexempt work and still be considered an executive if other pertinent factors support such a conclusion. 29 C.F.R. § 541.103.

■ After reviewing the record and applying the short test, we conclude that Hays was not entitled to JNOV or a new trial on the executive exemption issue. Hays spent more than 50 percent of his time on nonmanual, management tasks, and consequently he satisfied the "primary duty" requirement. He kept financial records, made recommendations on hiring and firing, and was responsible for the general operation of the golf course. He supervised and trained more than two full-time employees. Furthermore, he was not directly supervised by anyone on

a day-to-day basis. Accordingly, Hays qualified as an exempt executive.

We now turn to Hays's contention that the district court erred in failing to instruct the jury on the working foreman provision. The court denied Hays's requested instruction on the ground that it would confuse the jury. The City argues on appeal that the working foreman provision applies only to the executive exemption long test, and consequently that Hays was not entitled to the instruction. Hays contends that the working foreman provision applies whether the long or short test is used.

In order to resolve this issue, we turn first to the language of the working foreman provision. The provision begins by stating that "[t]he primary purpose of the exclusionary language [in the long test] placing a limitation on the amount of nonexempt work is to distinguish between the bona fide executive and the 'working' foreman or 'working' supervisor...." 29 C.F.R. § 541.115(a); *see* 29 C.F.R. § 541.1(e). A working foreman is a supervisor who is not exempt from the FLSA because he regularly performs work that is "unrelated or only remotely related to his supervisory activities." 29 C.F.R. § 541.115(a). Hays requested that the jury be instructed on the following clause of the working foreman provision:

One type of working foreman or working supervisor most commonly found in industry works alongside his subordinates. Such employees, sometimes known as strawbosses, or gang or group leaders perform the same kind of work as that performed by their subordinates, and also carry on supervisory functions. Clearly, the work of the same nature as that performed by the employees' subordinates must be counted as nonexempt work and if the amount of such work performed is substantial the exemption does not apply. ("Substantial," as used in this section, means more than 20 percent. See discussion of the 20–percent limitation on nonexempt work in § 541.112.)

29 C.F.R. § 541.115(b).

■ Hays contends that the working foreman provision applies to both the long test

and the short test. However, this interpretation is inaccurate: the working foreman provision is merely an explanation of the *long test's* limitation on nonexempt work described in 29 C.F.R. § 541.1(e). The introductory paragraph of the working foreman provision refers to the long test limitation on nonexempt work, indicating that the working foreman provision applies only to the long test. *See, e.g., Martin v. Tango's Restaurant, Inc.*, 969 F.2d 1319, 1325 (1st Cir.1992) (high salaried employee not subject to the working foreman's percentage limitation on hours). In addition, the 20 percent limitation on nonexempt work described in the working foreman provision is identical to the 20 percent limitation on nonexempt work in the long test, 29 C.F.R. § 541.1(e); and the subsection defining the 20 percent limitation in the long test, 29 C.F.R. § 541.112, also defines the 20 percent limitation in the working foreman provision, 29 C.F.R. § 541.115(b). These aspects of the working foreman provision indicate that Congress intended the provision to be a caveat to the requirements of the long test. The provision does not apply to the short test. Hays, an employee qualifying under the short test, was therefore not entitled to a working foreman instruction.

We next review whether Hays qualified for the administrative exemption to the FLSA. Like the executive exemption, the administrative exemption has both a long test and a short test for determining whether an employee qualifies. The long test applies to employees earning between $155 and $250 per week, while the short test applies to employees who earn more than $250 per week. Because Hays earned $461.54 per week, we apply the short test. An employee satisfies the administrative exemption short test if her primary duty consists of office or nonmanual work and includes work requiring the exercise of discretion and independent judgment. 29 C.F.R. §§ 541.2(e)(2), 541.214. The same definition of "primary duty" applies to both the administrative and the executive exemption short tests.

After reviewing the record and applying the short test, we conclude that the City produced enough evidence for a jury to find that Hays was an exempt administrator.

The record indicates that Hay's primary duties were nonmanual office work and that he frequently exercised discretion and independent judgment. Accordingly, the district court did not err in denying the motion for JNOV or new trial.

■ The district court granted summary judgment on the wrongful discharge claim and part of the conversion claim. Our review of those decisions is de novo "using the same legal standard as the district court." *Federal Election Comm'n v. Colorado Republican Fed. Campaign Comm.*, 59 F.3d 1015, 1018 (10th Cir.1995).

■ The Pauls Valley City Charter governed Hays's employment with the City. The charter states that the city manager shall "[a]ppoint and, when deemed necessary for the good of the service, lay off, suspend, demote or remove, all directors or heads of administrative departments and all other administrative officers and employees of the city. . . ." The Oklahoma Supreme Court has held that almost identical language does not change an employee's at-will status. *Hall v. O'Keefe*, 617 P.2d 196, 198–200 (Okla. 1980). Moreover, under Oklahoma law, an employer may discharge an at-will employee at any time, with or without cause, unless the discharge is contrary to a clear mandate of public policy. *Gilmore v. Enogex, Inc.*, 878 P.2d 360, 362–63 (Okla.1994).

■ Because Hays was an at-will employee under the city charter, the City had the power to dismiss him at any time. The contracts between Hays and the City did not change his at-will status. "Under Oklahoma law, where certain terms of employee dismissal are explicitly stated in the city charter, the city manager or other city officials are not authorized to alter or otherwise restrict those terms so as to legally bind the city." *Graham v. City of Oklahoma City*, 859 F.2d 142, 146 (10th Cir.1988); *see also Driggins v. City of Oklahoma City*, 954 F.2d 1511, 1514–15 (10th Cir.1992). Thus Hays was an at-will employee, and the City had the power to dismiss him without cause. Accordingly, the district court did not err in granting summary judgment on the claim of wrongful discharge.

Finally, we review the grant of summary judgment on the conversion claim. In Oklahoma, "[c]onversion is any act of dominion wrongfully exerted over another's personal property in denial of or inconsistent with his rights therein." *Welty v. Martinaire of Oklahoma, Inc.*, 867 P.2d 1273, 1275 (Okla. 1994). The exercise of dominion must be "in defiance or exclusion of the owner's rights." *Brown v. Oklahoma State Bank and Trust Co.*, 860 P.2d 230, 233 (Okla.1993).

Hays left his merchandise in the clubhouse after he was dismissed from his employment. Although the City changed the locks to the clubhouse, Hays was free to retrieve his property at any time during weekday business hours. Hays admitted in deposition testimony that he could have gone to the clubhouse and retrieved his property. He failed to do so. Furthermore, a bank eventually repossessed the goods, and Hays regained possession of them after he paid off his loan. There is no evidence in the record that the City exerted dominion over Hays's property in defiance or exclusion of Hays's rights. Accordingly, the district court's grant of summary judgment on the conversion claim was proper.

In sum, we hold that the City was not required to compensate Hays for overtime hours both because the golf course qualified as an exempt recreational establishment and because Hays qualified as an exempt administrator and executive under the short tests. In addition, we hold that because the working foreman provision applies only to the executive exemption long test, Hays was not entitled to a jury instruction on that provision. Finally, the district court did not err by granting summary judgment on the wrongful discharge and conversion claims.

We GRANT the appellee's application to file a rejoinder brief and AFFIRM the decision of the district court.