**Edward Patrick STRICKER**

v.

**EASTERN OFF ROAD EQUIPMENT, INC.**

**Civil No. CCB–94–2446.**

United States District Court, D. Maryland.

July 23, 1996.

David H. Greenberg, Spahn, Harvis, Greenberg & Broida, Columbia, MD, for Plaintiff.

Michael J. Wietrzychowski, Cureton Caplan & Clark, P.C., Mount Laurel, NJ, Jonathan D. Strum, Washington, DC, for Defendant.

## MEMORANDUM OPINION

BLAKE, District Judge.

Now pending is the defendant's motion for summary judgment concerning the plaintiff's claim for overtime compensation under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"). At issue is whether Edward Stricker, while working as a store manager for Eastern Off Road Equipment, Inc., was an exempt employee under the Act not entitled to overtime. The parties have completed discovery and the material facts are undisputed. For the following reasons, the defendant's motion will be GRANTED.

### I.

The defendant, Eastern Off Road Equipment, Inc. ("Eastern"), is a retailer of truck and off-road vehicle equipment. Eastern owns a number of independent retail outlet stores in several States. The plaintiff, Edward Patrick Stricker, worked for the defendant's store in Gaithersburg, Maryland. The parties dispute only the legal significance of the plaintiff's job duties, not the duties themselves.

The plaintiff began his employment with Eastern Off Road when he applied for and secured a job described in the newspaper as the "Store Manager" for Eastern Off Road.[1] After a three-week management training program, the plaintiff assumed the position of "Store Manager." James Banner, the General Manager of Eastern Off Road, testified that the store managers of the company's retail outlets are responsible for sales, profit, and the management of all controllable expenses as well as inventory and physical upkeep of the store. The description for the "retail manager" position lists the following duties: training and development of personnel; recommending personnel for promotions and transfers; ensuring that the proper procedures are followed when an employee leaves the company; and supervising the performance of personnel including ensuring that employees follow company policy with respect to: company money and property, store appearance and merchandising, records and all other paperwork, the store's check policy, the timely opening and closing of the store, managing the flow of inventory, and the time management of employees.

The plaintiff argues that his status and title were nothing more than an attempt by the defendant to avoid paying overtime under the FLSA. The plaintiff argues that he

---

1. Position titles have little, if any, significance when evaluating an employee's exempt status under the § 213 exemptions. *See Meyer v. Worsley Cos.,* 881 F.Supp. 1014, 1019 (E.D.N.C.1994); 29 C.F.R. § 541.201(b)(1).

was little more than "a salesman, a stock boy, a janitor, [and] a clerical worker."

## II.

The defendant has filed a motion for summary judgment arguing that the plaintiff was at all relevant times an exempt employee under the FLSA. The standards governing summary judgment are familiar and will be set forth first. The standards governing the plaintiff's FLSA claim follow.

### A.

▇▇▇ Rule 56(c) of the Federal Rules of Civil Procedure provides that:

> [Summary judgment] shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The only facts that are properly considered "material" are those that might affect the outcome of the case under the governing law. *Id.* at 249–50, 106 S.Ct. at 2511. If the evidence favoring the non-moving party is "merely colorable, or is not significantly probative, summary judgment may be granted." *Id.*

▇▇▇ To determine whether a genuine issue of material fact exists, all facts and all reasonable inferences drawn therefrom are construed in favor of the non-moving party. However, the non-moving party may not rest on its pleadings, but must show that specific, material facts exist to create a genuine, triable issue. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *Hinkle v. City of Clarksburg*, 81 F.3d 416, 421 (4th Cir.1996).

▇▇▇ The Supreme Court has explained that the Rule 56(c) standard mirrors the standard for judgment as a matter of law under Federal Rule of Civil Procedure 50(a). The Court has stated that "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson*, 477 U.S. at 249, 106 S.Ct. at 2511; *see also Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir.), *cert. denied*, —— U.S. ——, 115 S.Ct. 67, 130 L.Ed.2d 24 (1994); *Catawba Indian Tribe v. South Carolina*, 978 F.2d 1334, 1339 (4th Cir.1992), *cert. denied*, 507 U.S. 972, 113 S.Ct. 1415, 122 L.Ed.2d 785 (1993). While the court must "view the facts and draw reasonable inferences in a light most favorable to the nonmoving party," *Shaw*, 13 F.3d at 798, it also must abide by its affirmative obligation to ensure that factually unsupported claims and defenses do not proceed to trial. *See Felty v. Graves–Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir.1987) (citing *Celotex*, 477 U.S. at 323–24, 106 S.Ct. at 2553). The district court is required to enter judgment against a party who, "after adequate time for discovery ... fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial [and t]he moving party is 'entitled to judgment as a matter of law.'" *Id.* at 323, 106 S.Ct. at 2552.

### B.

▇▇▇ Generally, employees working more than forty hours in a workweek must be paid at a rate of time and one half for the excess hours worked. 29 U.S.C. § 207(a)(1). However, these overtime pay requirements do not apply to "any employee employed in a bona fide executive, administrative, or professional capacity." *Id.* § 213(a). Exempt status is an affirmative defense under the FLSA, and, therefore, the defendant bears the burden of

proof on that issue. *See Clark v. J.M. Benson Co.*, 789 F.2d 282, 286 (4th Cir.1986). Because FLSA exemptions must be narrowly construed, *see Hays v. City of Pauls Valley*, 74 F.3d 1002, 1006 (10th Cir.1996), the defendant must prove the plaintiff's exempt status by clear and convincing evidence, *see Shockley v. City of Newport News*, 997 F.2d 18, 21 (4th Cir.1993).

■ Regulations promulgated by the Department of Labor establish binding standards[2] for determining whether an employee is employed in a "bona fide executive, administrative, or professional capacity." *See* 29 C.F.R. pt. 541. For each of the three exempt categories, the regulations provide a detailed "long test" and a less detailed "short test." The short test contains fewer specific standards but requires a greater minimum weekly salary than required for qualification under the long test.

Store managers are frequently held to be exempt under the executive category. *See, e.g., Murray v. Stuckey's, Inc.*, 50 F.3d 564, 570 (8th Cir.) (convenience store managers), *cert. denied*, —— U.S. ——, 116 S.Ct. 174, 133 L.Ed.2d 114 (1995); *Donovan v. Burger King Corp.*, 675 F.2d 516, 520–22 (2d Cir. 1982) (fast food restaurant assistant managers); *Masilionis v. Falley's, Inc.*, 904 F.Supp. 1224, 1229–30 (D.Kan.1995) (produce manager of a grocery store); *Meyer v. Worsley Cos.*, 881 F.Supp. 1014, 1017–21 (E.D.N.C.1994) (Scotchman store manager). However, under both the long and short tests, an exempt executive employee must "customarily and regularly" supervise two or more other employees. *See* 29 C.F.R. § 541.1(b), (f). The defendants concede that the plaintiff did not supervise more than two employees and therefore does not satisfy this requirement for exemption. They argue instead that the plaintiff's duties meet the requirements of the administrative short test, *see id.* § 541.2(e)(2), or, in the alternative, a "combination exemption" which incorporates the executive and administrative exemptions, *see id.* § 541.600.[3]

■ The combination exemption applies to workers whose primary duty is neither management nor administration. *See Shockley*, 997 F.2d at 29. " 'In combination exemptions ... the employee must meet the stricter of the requirements on salary and non-exempt work.' " *Id.* (quoting 29 C.F.R. § 541.600(a)). To qualify for the combination exemption, the plaintiff must satisfy the long tests for both executive and administrative employees, and the defendant must demonstrate that no more than 20% of the plaintiff's time was devoted to non-exempt work. *See Auer v. Robbins*, 65 F.3d 702, 722 (8th Cir.1995), *cert. granted*, —— U.S. ——, 116 S.Ct. 2545, 135 L.Ed.2d 1066 (1996); *Shockley*, 997 F.2d at 29. Because the defendant concedes that the plaintiff did not supervise two or more employees, he does not qualify for the executive exemption, *see* 29 C.F.R. § 541.1(b), and therefore can not qualify for the combination exemption.

The short test for the administrative exemption applies here because the plaintiff earned more than $250 per week in salary.[4] The short test provides, in relevant part:

[A]n employee who is compensated on a salary or fee basis at a rate of not less than $250 per week ... and whose primary duty consists of the performance of [office or nonmanual work directly related to management policies or general business operations of his employer or his employer's customers] which includes work requiring the exercise of discretion and inde-

---

**2.** The regulations implementing the FLSA have the force of law, *see United States v. Nixon*, 418 U.S. 683, 695, 94 S.Ct. 3090, 3101, 41 L.Ed.2d 1039 (1974), and control unless they are arbitrary, capricious, or manifestly contrary to the Act, *see Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 844, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984).

**3.** The "combination exemption" is a non-binding interpretation of the regulations and not a regulation itself. It is entitled to deference to the extent that it appears to be well thought out,

based on valid reasoning, consistent with other pronouncements of the agency, and otherwise persuasive. *See Skidmore v. Swift & Co.*, 323 U.S. 134, 140, 65 S.Ct. 161, 164, 89 L.Ed. 124 (1944).

**4.** During the relevant time period, the plaintiff's base salary ranged from $442.31 to $403.85 per week. The plaintiff was paid in bi-weekly installments which did not vary in amount regardless of the hours worked.

pendent judgment, shall be deemed to meet all the requirements of this section. *Id.* § 541.2(e)(2) (incorporating language from § 541.2(a)(1)). Subpart B of the regulations ("Interpretations") provides detailed guidance for applying the regulatory requirements for all exempt categories.[5] The interpretations track and analyze the language of each regulation.

First, to qualify for the exemption under the short test, the administrative tasks must be the employee's "primary duty." Generally, an employee's "primary duty" is administration if fifty percent or more of that employee's time is devoted to administrative duties. *See id.* §§ 541.103 (under the executive exemption, the 50% rule typically applies), 541.206 (definition of "primary duty" under executive exemption applies to administrative exemption). While the percentage of time spent performing administrative duties is important, an employee may qualify for the administrative exemption even if that employee devotes less than half of his or her time to administrative duties. Other relevant factors to consider include "the relative importance of the [administrative] duties as compared with other types of duties, the frequency with which the employee exercises [discretion and independent judgment], his relative freedom from supervision, and the relationship between his salary and the wages paid other employees for the kind of nonexempt work performed by the [administrator]." *Id.* § 541.103. In other words, "the short test for determining whether an employee is employed in an administrative capacity requires proof either that the employee spends half his time on administrative duties or that administrative duties have spe-

cial significance relative to the employee's other duties." *Shockley*, 997 F.2d at 28.

Second, the administrative exemption is limited to "office or nonmanual work." The interpretations provide that this requirement restricts the exemption to so-called "white collar" employees. A bona fide administrative worker may nevertheless perform some manual work which is "directly and closely related to the work requiring the exercise of discretion and independent judgment." *See* 29 C.F.R. § 541.203(b).

Third, the work performed must be "directly related to management policies or general business operations." In a retail setting, this refers to activities relating to the administrative operations of a business as distinguished from sales work. *See id.* § 541.205(a). The work performed must be "of substantial importance to the management or operation of the business." *Id.* Examples of such duties include "advising the management, planning, negotiating, representing the company, purchasing, promoting sales, and business research and control." *Id.* § 541.205(b). An exempt administrative employee need not actually participate in either the formulation of policy or the broad operation of the business. Rather, "[e]mployees whose work is 'directly related' to management policies or to general business operations include those [whose] work affects policy or whose responsibility it is to execute or carry it out." *Id.* § 541.205(c). The interpretations provide some specific examples of exempt and nonexempt workers for illustrative purposes. The interpretations provide the following example of the distinction:

---

5. The Secretary's interpretations of the regulations (and ultimately the statute) are accorded significant deference by the courts. In *Skidmore* the Supreme Court considered the persuasive weight of the opinions, interpretations, and rulings of the Wage and Hour Administrator under FLSA and determined that they are

> not controlling upon the courts by reason of their authority, [yet] do constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance. The weight of such a judgment in a particular case will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and

> later pronouncements, and all those factors which give it power to persuade, if lacking power to control.

*Skidmore*, 323 U.S. at 140, 65 S.Ct. at 164. In most cases, the interpretations of the FLSA exemption regulations will be accorded great deference, *see Klein v. Rush–Presbyterian–St. Luke's Med. Ctr.*, 990 F.2d 279, 285 (7th Cir.1993), however in some cases they may have little persuasive value. *See Freeman v. National Broadcasting Co.*, 80 F.3d 78, 84 (2d Cir.1996) ("out-of-date" interpretation of long test regulation was not persuasive as applied to case decided under the short test).

Some firms employ persons whom they describe as 'statisticians.' If all such a person does, in effect, is to tabulate data, he is clearly not exempt. However, if such an employee makes analyses of data and draws conclusions which are important to the determination of, or which, in fact, determine financial, merchandising, or other policy, clearly he is doing work directly related to management policies or general business operations.... In each case, between these extreme types there are many employees whose work may be of substantial importance to the management or operation of the business, depending on the particular facts.

*Id.* § 541.205(c)(3). The interpretations also provide that one whose duties include purchasing for a retail business may also be an administrative employee if that work is of substantial importance to the management or operation of the business. *See id.* § 541.205(c)(4).

Finally, an exempt administrative employee's duties must involve "discretion and independent judgment." This term contemplates "the comparison and the evaluation of possible courses of conduct and acting or making a decision after the various possibilities have been considered. The term ... implies that the person has the authority or power to make an independent choice, free of immediate direction or supervision and with respect to matters of significance." *Id.* § 541.207(a). Additionally, routine work that is closely related to exempt work may also qualify for exemption.

To illustrate the distinction between work that does and does not involve the exercise of discretion and independent judgment the interpretations contrast a personnel clerk, whose duties involve the mechanical and non-discretionary task of screening applicants for the qualifications established by others, with a personnel manager who performs the screening, interviewing, and hiring functions. The personnel manager is performing exempt work (even during the screening and

interviewing periods) because those tasks are directly and closely related to the personnel manager's exempt functions. *See id.* § 541.207(c)(5). Similarly, a retail buyer who is responsible for purchasing or pricing policies qualifies for the administrative exemption even when that buyer is performing activities not involving discretion and independent judgment, such as comparison shopping. This is so, again, because comparison shopping is directly and closely related to the buyer's exempt functions of buying and pricing. In contrast, a comparison shopper not involved in buying and pricing decisions will not qualify for the administrative exemption. *See id.* § 541.207(c)(6). Additionally, the subject matter of the discretion and independent judgment exercised by the employee must involve matters of significance, that is, "the kinds of decisions normally made by persons who formulate or participate in the formulation of policy within their spheres of responsibility or who exercise authority within a wide range to commit their employer in substantial respects financially or otherwise." *Id.* § 541.207(d)(2). Although the decisions in question must be of significance, they need not be immune from review, revision, or reversal. The types of decisions that qualify may be in the form of recommendations to superiors and subject to review and approval. *See id.* § 541.207(e)(1).

### III.

■ As noted above, the parties do not dispute the relevant facts. At all relevant times, the plaintiff was the highest ranking employee at the Gaithersburg store.[6] As such he was responsible for all of the duties associated with running a retail establishment. For example, the plaintiff testified that he was responsible for "[o]rganizing the charges, balancing the cash register, organizing the sales tickets or invoices, tracking sales, making the bank deposit up ... [r]ecording and logging special orders, [and] recording ... the breakdown in sales." The plaintiff also would open all mail addressed to the store or the store manager, set up and

---

**6.** At various times, the plaintiff worked alone in the store, worked with a subordinate assistant manager, and worked with a "co-manager." Also, on occasion, someone from upper-level management at Eastern Off Road would visit the store. At no time, however, was the plaintiff a subordinate to anyone working at the Gaithersburg store.

maintain store displays, open the store in the morning and close it at night, and respond to alarms when they sounded in the store. Although he did not have final hiring authority, the plaintiff was authorized to recruit, interview, and recommend prospective hires to the regional manager.

The plaintiff was also responsible to upper management for the financial health of the store, including reaching retail sales goals. He was responsible for maintaining the proper level of inventory, ensuring that merchandise was available to meet customer needs, and avoiding "shrinkages and overages." If the inventory was low for an item, the plaintiff would conduct a computer search for the item and contact the person responsible for inventory control at the warehouse to correct the shortage. When a customer requested merchandise that Eastern Off Road did not supply, the plaintiff had the authority to special-order the item from companies other than Eastern Off Road. He did not require authorization to place such orders, and he had the authority to negotiate the price of these special order items where there was no predetermined price between Eastern Off Road and the supplier. The plaintiff also had the discretion to set retail prices, within a range, to individual customers and dealerships. One of the plaintiff's responsibilities as store manager was to establish a Dealer Sales Program. This involved the plaintiff establishing relationships with automotive dealerships on behalf of Eastern Off Road. The plaintiff was assigned a sales area within which he was to approach dealerships with proposals for supplying them with merchandise sold by the company. In running this program, the plaintiff generally had the discretion to choose the dealership he wished to visit as well as the date and time the visit would take place.

For a period, the plaintiff had supervisory responsibilities as well. From December 1993 to April 1994 the plaintiff supervised an assistant manager. The plaintiff was in all respects the supervisor of the assistant manager; the plaintiff had the authority to warn and discipline the assistant manager, and he was authorized to recommend the assistant manager's termination or suspension. The plaintiff was responsible for drafting his employee's work schedule, as well as his own. Finally, the plaintiff attended monthly manager's meetings at which the plaintiff, other managers, and upper management discussed the company's performance. The plaintiff participated at these meetings and expressed his opinion about matters affecting the Gaithersburg store.

These undisputed facts support a finding that the plaintiff satisfies the short test for the administrative exemption to the overtime provisions of the FLSA. First, one of the central elements of the exemption is that the employee perform work "directly related to management policies or general business operations." Activities fitting this description include "advising the management, planning, negotiating, representing the company, purchasing, promoting sales, and business research and control." 29 C.F.R. § 541.205(b). The work must be directly related to management policies or general business operations; this may entail either affecting the formulation of policy or executing and carrying it out. *See id.* § 541.205(c). The plaintiff's job duties involving routine and special procurement of inventory, negotiating prices with dealers and purchasers of the store's merchandise, the Dealer Sales Program, and the cash management of the store all satisfy this requirement. *See Hills v. Western Paper Co.,* 825 F.Supp. 936, 938 (D.Kan.1993) (finding that duties of Accounting and Credit Manager who kept track of bills and payments and ensured that customers were creditworthy were directly related to the management policies and general business operations of a paper company).

Second, the work performed must involve discretion and independent judgment. The plaintiff's work involving procurement of inventory, particularly special orders; establishing relationships with dealers pursuant to the Dealer Sales Program; supervising the assistant manager; and establishing prices for merchandise all involve matters which commit Eastern Off Road "in substantial respects financially and otherwise." *See id.* §§ 541.207(c)(6), (d)(2). Although employees with these duties are frequently deemed ex-

ecutives for the purposes of FLSA, courts have held that such workers may be classified as administrators. For example, in *Cowan v. Tricolor, Inc.*, 869 F.Supp. 262 (D.Del. 1994), *aff'd without op.* 60 F.3d 814 (3d Cir. 1995), the court held that an "Office Manager" of a specialty retail business with duties similar to the plaintiff was an exempt administrative employee. The plaintiff's duties in *Cowan* were in part set forth in a letter attached to her answering brief. It read:

> Katherines' [sic] primary activity was Office Manager, which included writing orders, making quotations, preparing invoices, customer relations and supervising another employee engaged in similar activities. When the General Manager was not present Katherine was responsible to open the facility in the morning and close and set the security alarm at night. She also handled UPS and Federal Express shipments to out of state customers in a timely manner. Katherine handled a busy 2–line phone system, made collection calls when necessary and inventoried and ordered office supplies and some production materials.

*Id.* at 264–65 (alteration in original). In addition, the plaintiff in *Cowan* was responsible for "maintaining rapport and negotiating the delivery schedules" for customers. *See id.* at 265.

Third, the interpretations of the regulations state that the administrative exemption is limited to "white collar" office or nonmanual work. *See id.* § 541.203(a). The plaintiff is not disqualified from the administrative exemption simply because his work involved the "hands-on" management of a retail store and required him to perform some duties outside of the store. As noted above, the interpretations of these regulations are not binding. *See Freeman*, 80 F.3d at 84. Moreover, the interpretations themselves do not purport to *require* that exempt administration take place in an office or at a desk. The regulation as written exempts office *or* nonmanual work. Some of the examples of exempt work listed in the interpretations are plainly not "white-collar office work" thus making it clear that the word "nonmanual" in the regulations is intended to provide an

additional category of exempt work and is not intended to be descriptive of office work. *See, e.g.*, 29 C.F.R. § 541.201(a)(3)(i) (listing as exempt, administrative employees "whose work is performed away from the employer's place of business" such as "lease buyers, field representatives of utility companies, location managers of motion picture companies, and district gaugers for oil companies"). Because the plaintiff's primary duties did not involve "manual work," such as performing repetitive manual tasks or "using tools, instruments, machinery, or other equipment" this element of the regulations will not take the plaintiff out of the exempt class. *See id.* § 541.203(b); *cf. Hays*, 74 F.3d at 1007–08 (jury entitled to find that golf course manager was an exempt administrator where manager kept financial records, made personnel recommendations, was responsible for the general operation of the golf course, and was not directly supervised on a day-to-day basis).

Finally, the plaintiff's exempt work must be his "primary duty" to qualify for the administrative exemption. Neither party has cited any evidence that attempts to quantify the percentage of time spent by the plaintiff in his administrative duties. Time spent performing administrative duties, however, is not determinative. The fifty percent rule discussed above is merely a "useful guide." If a worker's most important duties are administrative, if the worker exercises discretion and independent judgment frequently, and if the worker is relatively free from direct supervision, quantifying the time spent performing administrative duties is not required. The interpretations provide an example with particular relevance to this case:

> [I]n some ... subdivisions of an establishment, an employee has broad responsibilities similar to those of the owner or manager of the establishment, but generally spends more than 50 percent of his time in production or sales work. While engaged in such work he supervises other employees, directs the work of warehouse and delivery men, approves advertising, orders merchandise, handles customer complaints, authorizes payment of bills, or performs other management duties as the day-to-day operations require. He will be consid-

ered to have management as his primary duty.

29 C.F.R. § 541.103. It is undisputed, as noted above, that the plaintiff was the highest ranking employee located at his store. Either alone, or with a co-manager, the plaintiff was responsible for the "day-to-day operations" of the store. Even if the plaintiff spent more than half of his workday performing non-exempt work, his primary duty was to manage the store. The plaintiff was responsible for ensuring that the store's sales goals were met, that the store was neither over nor understocked with merchandise, that inventory was ordered in a timely fashion, that the store opened and closed on time, and that customers were satisfied. Because administration of the store had "special significance relative to the [plaintiff's] other duties," administration was the plaintiff's "primary duty." *See Shockley,* 997 F.2d at 28; *see also Hays,* 74 F.3d at 1007.

Based on the foregoing, I conclude that the plaintiff met the requirements for the short test of the administrative exemption from the overtime pay requirements of the FLSA. The defendant's motion for summary judgment will be **GRANTED** by separate Order.

### ORDER

For the reasons stated in the accompanying Memorandum Opinion, it is hereby **ORDERED** that:

1. The defendant's motion for summary judgment is **GRANTED,** and

2. The Clerk shall **CLOSE** this case.