Frances Jean BERTRAND, Plaintiff

v.

The CHILDREN'S HOME, Defendant.

Civil No. AMD 05–2873.

United States District Court,
D. Maryland.

May 17, 2007.

Neil R. Lebowitz, Law Office of Neil R. Lebowitz LLC, Columbia, MD, for Plaintiff.

John M. Singleton, Jennifer L. Stair, Singleton Gendler and Terrasa, Owings Mills, MD, for Defendant.

## MEMORANDUM OPINION and ORDER

DAVIS, District Judge.

Plaintiff, Frances Jean Bertrand, has brought two lawsuits against her former employer, The Children's Home, Inc. (TCH), a social services organization, arising out of her employment as a secretary. In this case, filed in 2005, she asserts a claim for violation of the overtime pay provision of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 207(a)(2), and related Maryland wage laws, to recover unpaid overtime wages, liquidated damages, attorney's fees, and costs. In the recently-filed case, number AMD 07–504, she has asserted numerous discrimination claims. Now before the court is defendant's motion for summary judgment in the overtime pay case. The motion has been fully briefed and no hearing is needed. For the reasons set forth herein, I shall deny the motion for summary judgment and stay this case, pending the completion of discovery in respect to the newly-filed discrimination case, with an eye to trying both cases on a consolidated basis.

### I.

Of course, the facts shall be viewed in the light most favorable to plaintiff as the nonmovant.

Plaintiff worked for TCH from 1982 until 2005, holding a variety of positions, all of which involved secretarial duties of one sort or another. When she began, plaintiff was a nonexempt "social services secretary." In 1985, plaintiff's title became "administrative secretary." Later, her title became "executive secretary;" during her tenure as "executive secretary" she worked as an assistant to the executive director and exercised some supervisory responsibility over one or more others.

Until 1992, defendant designated plaintiff as a non-exempt employee under the FLSA, and thus, indisputably, she was entitled to be paid overtime compensation. In 1992, TCH designated plaintiff as ex-

empt under the FLSA and Maryland's wage laws, and thereafter, overtime compensation was not payable to plaintiff. At that time, Bertrand signed an employment agreement in which she acknowledged her exempt status. Plaintiff returned to a non-exempt status effective January 31, 2005.

In connection with her 1992 change in status, plaintiff's rate of pay, $11.1786 per hour, did not change. Nor did the change in status from non-exempt to exempt have a great impact on plaintiff because before 2001, plaintiff was a part-time employee. Plaintiff became a full-time employee after Andre Cooper became CEO in 2002.

Plaintiff claims that, in 2002, she began working overtime hours. Upon inquiring about her exempt status, plaintiff was told she was exempt because she "supervised the receptionist." Plaintiff asserts that she did not have this supervisory role, which she says was a minor part of her duties in any event, until more than eight years after the company first designated her as exempt: there was no receptionist position until then.

Defendant's policy does not require exempt employees to record daily hours worked but only whether they were present on a particular day, recording eight hours regardless of the actual hours worked. Plaintiff adhered to this policy; thus, she has no detailed accounting of her actual hours after 1992. Non-exempt employees were required to use an automated time and attendance system to register in at the beginning of their shift and out at the close of their shift.

Plaintiff's employment formally terminated on June 1, 2005. On October 21, 2005, plaintiff brought this action, seeking unpaid overtime for the period October 21, 2002, to January 29, 2005.

## II.

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A fact is material for purposes of summary judgment, if, when applied to the substantive law, it affects the outcome of the litigation. *Id.* at 248, 106 S.Ct. 2505. Summary judgment is also appropriate when a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Laura Campbell Trust v. John Hancock Life Ins. Co.,* 411 F.Supp.2d 606, 609 (D.Md.2006).

A party opposing a properly supported motion for summary judgment bears the burden of establishing the existence of a genuine issue of material fact. *Anderson,* 477 U.S. at 248–49, 106 S.Ct. 2505. "When a motion for summary judgment is made and supported as provided in [Rule 56], an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavit or as otherwise provided in [Rule 56] must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). *See Celotex Corp.,* 477 U.S. at 324, 106 S.Ct. 2548; *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505; *Shealy v. Winston,* 929 F.2d 1009, 1012 (4th Cir.1991). The facts, as well as the justifiable inferences to be drawn therefrom, must be viewed in the light most

favorable to the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The court, however, cannot rely upon unsupported speculation and it has an affirmative obligation to prevent factually unsupported claims and defenses from proceeding to trial. *See Felty v. Graves–Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir.1987).

## III.

■ Defendants in FLSA cases have the burden to "prove by clear and convincing evidence that an employee qualifies for exemption." *Shockley v. City of Newport News*, 997 F.2d 18, 21 (4th Cir.1993). In making this showing, "[t]he employer has the burden of establishing by affirmative evidence all the necessary requirements of the exemption." *Dalheim v. KDFW–TV*, 706 F.Supp. 493, 501 (N.D.Tex.1988), *aff'd*, 918 F.2d 1220 (5th Cir.1990); *Clark v. J.M. Benson Co.*, 789 F.2d 282, 285–86 (4th Cir.1986). Exemptions from the FLSA's overtime pay requirements are "narrowly construed." *Walton v. Greenbrier Ford, Inc.*, 370 F.3d 446, 450 (4th Cir.2004)(citing *Auer v. Robbins*, 519 U.S. 452, 462, 117 S.Ct. 905, 137 L.Ed.2d 79 (1997)); *Shockley*, 997 F.2d at 24 ("Courts construe exemptions to the FLSA narrowly 'in order to further Congress' goal of providing broad federal employee protection.' " (citation omitted)).

■ Defendant contends that plaintiff's status as an exempt employee is consonant with the requirements established in controlling federal regulations, *see* 29 C.F.R. 541.200(a), et seq., and that I should so conclude as a matter of law. Plaintiff argues, to the contrary, that drawing all reasonable inferences in her favor as the non-movant, and bearing in mind defendant's burden of proof ("clear and convincing evidence"), defendant has failed to es-

tablish her exempt status as a matter of law. In particular, plaintiff argues that she did not work in an *administrative* capacity as contemplated under the FLSA, but that her work was essentially the same as the other, admittedly non-exempt, secretaries working for TCH. I agree with plaintiff that this issue is properly a jury question.

"Department of Labor regulations define what constitutes employment in an executive or administrative capacity." *Shockley*, 997 F.2d at 21. Under the regulations, to show that an employee is exempt as an administrative employee, an employer must show that its employee is one who is "(1) Compensated on a salary or fee basis at a rate of not less than $ 455 per week ..., exclusive of board, lodging or other facilities; (2) Whose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and (3) Whose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance." 29 C.F.R. § 541.200(a).

Plaintiff concedes that defendant has satisfied the first element of its affirmative defense. The dispute here is over the final two elements of the affirmative defense. As to the second element, although it is clear that Bertrand's work was non-manual, office work, the issue presented is whether it was "directly related to the management or general business operations" of TCH. To meet this standard, defendant must show that plaintiff engaged in activities such as "running the business itself or determining its overall course," not just in the "day to day carrying out" of business affairs. *Bothell v. Phase Metrics, Inc.*, 299 F.3d 1120, 1125 (9th Cir.2002) (citation omitted). The Fourth Circuit has observed "that book-

keepers, secretaries, and clerks of various kinds hold the run-of-the-mine positions in any ordinary business and are not performing work directly related to management policies or general business operations." *Clark*, 789 F.2d at 286–87 (quoting 29 C.F.R. § 541.205(c)(1)). The regulations emphasize the type of work, rather than any label or job title.

Here, although particular items of evidence in the record concerning Bertrand's duties support one or the other of the parties' arguments, a reasonable jury could easily conclude that Bertrand's work was essentially and predominantly clerical in nature, and not administrative or managerial. Indeed, Bertrand's former boss described her duties, in part, as "providing secretarial support across various departments" including scheduling and dealing with vendors. Likewise, plaintiff described at length in her deposition her secretarial duties, which included ordering supplies, taking minutes at company meetings, completing forms, and, under supervision, distributing petty cash.[1]

In sum, although the services plaintiff provided to TCH were valuable and important to its operations, defendant's showing here does not establish as a matter of law, bearing in mind the burden of proof here of clear and convincing evidence, that plaintiff's duties "directly related to the management or general business operations of the employer"

Similarly, as to the third element of the affirmative defense, while it is clear that some of plaintiff's duties entailed the exercise of "discretion and independent judgment," e.g., meeting with office equipment dealers and evaluating their prices, a jury could reasonably find that those duties were not her *primary duties*. *See Clark*, 789 F.2d at 286 (noting that "primary duty" means "the major part or over 50 percent" of the employee's time). Moreover, a reasonable juror could find that as to those of her duties classified as among her primary duties, the exercise of discretion and independent judgment in the performance of such duties was not in "respect to matters of significance."[2] Ac-

---

**1.** Defendant points to Bertrand's job description, which gave her "authority to delegate assignments" and authority to oversee the receptionist, as evidence that she worked in an administrative capacity. Defendant also argues that plaintiff *agreed to* this job description. Whether this is so (and Bertrand contends she merely confirmed that it was in fact the description of the job she held) may or may not be viewed by a jury as probative, but the job description is not the most important consideration—Bertrand's actual duties are. *See Cooke v. General Dynamics Corp.*, 993 F.Supp. 56, 61 (D.Conn.1997) ("Whether an employee is exempt is determined by the employee's actual work activities, not by the employer's characterization of those activities through a job title or job description.") (citation omitted); *see also Bennett*, 225 F.Supp.2d at 218 (same).

Even assuming the job description is highly probative, many (if not most) of the duties described may nonetheless be viewed as clerical duties that are quite common for secre-

taries and not essentially managerial. The description includes duties such as having "authority from the executive director to delegate assignments to be completed," "overseeing all work completed by the receptionist, and direct[ing] her in order of priorities," and "maintain[ing] special events." Simply speaking, the existence of a hierarchy among clerical staff does not mandate the conclusion that Bertrand's work was directly related to "management or general business operations."

**2.** Some of Bertrand's duties required her to seek permission from her superiors. For example, when giving petty cash, she was required to seek permission unless a supervisor was making the request. Furthermore, supervision duties do not automatically justify assignment of the employee to an exempt status. *See* 29 C.F.R. 541.207(e)(1); *see also West v. Anne Arundel County, Md.*, 137 F.3d 752, 764 (4th Cir.1998); *Stricker v. Eastern Off Road Equip., Inc.*, 935 F.Supp. 650, 656

cordingly, defendant has not established that it is entitled to summary judgment on the affirmative defense that Bertrand was an exempt, i.e., an administrative, employee.

## IV.

■ Defendant raises an interesting issue regarding Bertrand's enjoyment, over many years, apparently, of the *benefits* of an exempt employee and whether that should preclude her overtime claim. Most compelling of this evidence is proof that Bertrand worked flexible hours, taking

(D.Md.1996). Defendant also cites plaintiff's practice of photocopying all cash received by TCH, a practice that has now been discontinued. Certainly, a responsibility for handling an employer's currency could be viewed as "of significance," but photocopying certainly is not. Other examples of plaintiff's duties include giving employees supplies, fixing office equipment, and helping with the postage meter.

3. Defendant argues that Bertrand *acknowledged* her new status, and that when she later inquired about her status, she was told why she was not paid overtime, and she elected to stay in her position. These conversations and events are of little guidance here, however, as a juror could conclude on this record that Bertrand's status was changed by the defendant unilaterally. There is no compelling evidence that she had a *choice* in the matter. Manifestly, the mere fact that she continued in her position and signed a new agreement does not nullify her entitlement to overtime if she is non-exempt. *Rogers v. Savings First Mortgage, LLC,* 362 F.Supp.2d 624, 629 (D.Md.2005)(noting that there is a "nonwaivable nature of an individual employee's right to a minimum wage and to overtime pay under [FLSA]" and " 'FLSA rights' cannot be abridged by contract or otherwise waived because this would nullify the purposes of the statute and thwart the legislative policies it was designed to effectuate.") (quoting *Barrentine v. Arkansas–Best Freight System, Inc.,* 450 U.S. 728, 740, 101 S.Ct. 1437, 67 L.Ed.2d 641 (1981) (citation omitted)); *see also Jewell Ridge Coal Corp. v. Mine Workers,* 325 U.S. 161, 167, 65 S.Ct. 1063, 89 L.Ed. 1534 (1945) ("[E]mployees are not to be deprived of the

longer lunches and working less than full days, and such. Nonetheless, (apart from the fact that defendant did not plead estoppel as an affirmative defense) it is inappropriate to conclude here that defendant has established this defense (assuming it is properly a part of this case) as a matter of law.[3]

## V.

■■ Defendant also seeks a determination that Bertrand's proof of damages is too speculative to be presented to a jury.

benefits of the Act simply because they are well paid or because they are represented by strong bargaining agents."); *Dunlop v. Gray–Goto, Inc.,* 528 F.2d 792, 794–95 (10th Cir. 1976) ("[P]rivate agreement or understanding between the parties cannot circumvent the overtime pay requirements of the Act."); *Abendschein v. Montgomery County,* 984 F.Supp. 356, 359–60 (D.Md.1997) ("FLSA rights are nonwaivable, and 'cannot be abridged by contract.' ").

In its Reply Memorandum, TCH cites to *Garofolo v. Donald B. Heslep Associates, Inc.,* 405 F.3d 194 (4th Cir.2005), for the proposition that when the parties agree, the overtime rate can be included in the salary of the employee. But here, there is, at best, equivocal evidence that the parties "agreed." While Bertrand signed an employment contract describing her as exempt, the record could be interpreted by a reasonable juror as indicating that Bertrand had to agree to a change in status or lose her job. This is hardly the type of agreement contemplated by the FLSA. Second, there is no clear evidence that "overtime pay" was included in Bertrand's salary. Certainly, her salary remained the same upon the 1992 change in her status. While it may have increased in the years since, and while she may have been paid a premium for certain duties such as attending meetings of the Board of Trustees, there is no evidence that any raise was based on her exempt status. *Cf. Adams v. Dept. of Juvenile Justice,* 143 F.3d 61, 68 (2nd Cir.1998)("if the annual salary was properly intended by the parties to account for both a regular rate and an overtime rate, the contemplated arrangement is in compliance with the FLSA").

To be sure, "an employee suing an employer under the Fair Labor Standards Act for ... unpaid overtime compensation has the burden of proving that the employee performed the work for which the employee was not properly compensated." *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 686–87, 66 S.Ct. 1187, 90 L.Ed. 1515 (1946). I agree that Bertrand's proof of damages seems thin, at best, but considering the facts in the light most favorable to her, she has projected sufficient evidence to get to the jury as to *some* amount.[4] Accordingly, summary judgment in favor of defendant is not warranted on the ground that plaintiff will be unable to prove any damages.

## VI.

■ Finally, defendant contends that a two year period of limitations, rather than a three year period, is applicable in this case, because it did not act willfully or in reckless disregard of its obligations under the FLSA.[5] I readily agree with defendant that there is substantial evidence that it did not act willfully. Nevertheless, in light of the fact that defendant designated Bertrand as exempt even while she was a part-time employee (without a change in her rate of pay), and that it was only over a period of several years of full-time employment that her job responsibilities grew to include some supervision and a more frequent and expansive measure of discretion in the performance of her tasks, and drawing all inferences in favor of plaintiff, the question of willfulness is best determined by a jury. *Cf. Glunt v. GES Exposition Servs.*, 123 F.Supp.2d 847, 861 (D.Md.2000) ("In general, issues of fact bearing on the application of a statute of limitations are submitted, as are other issues of fact, for determination by the jury." (citations omitted)); *Soto v. Mc-Lean*, 20 F.Supp.2d 901, 913 (E.D.N.C.1998)("[W]illfulness for purposes of 29 U.S.C. § 255(a) is properly a factual question to be put before the jury, granting summary judgment for defendants on this issue would be inappropriate").

## VII.

For the reasons set forth above, defendant's motion for summary judgment is DENIED, and this case is STAYED pend-

---

4. Bertrand, who did not keep a record of her actual hours (because she was designated as exempt), makes a seemingly doubtful estimate that she worked more than 12 hours overtime per week, *on average.* On the other hand, defendant has produced substantial evidence, including e-mails and other documents, as well as certain admissions by Bertrand, that many of Bertrand's claimed hours cannot be substantiated. TCH also contends that any extra hours Bertrand worked were not at its request or demand. But common experience tells us that often, when long hours are worked, those hours are not always explicitly requested, but rather, that they are expected to be given to the work if necessary to complete the work. If Bertrand worked overtime, the only reasonable reason to do so, *without compensation,* would be if she felt it was required. In any event, Bertrand claims that she was told she had to work as long "as it took to get things done." The credibility of this assertion is for the jury.

5. Bertrand bears the burden to establish a willful violation. *EEOC v. O'Grady*, 857 F.2d 383, 388 (7th Cir.1988). In order to prove a willful violation, she must show that TCH must have known that, or "showed reckless disregard" that, its conduct was prohibited by the FLSA. *McLaughlin v. Richland Shoe Company*, 486 U.S. 128, 130, 108 S.Ct. 1677, 100 L.Ed.2d 115 (1988). Mere negligence is not enough. *See id.* at 133, 108 S.Ct. 1677. Bertrand never requested overtime compensation when she worked at TCH; thus, she was never refused overtime. Nevertheless, even if she had been refused, there is evidence on TCH's side that it was proper to designate Bertrand as exempt. That evidence is for a jury to weigh and assess.

ing completion of discovery in case number AMD 07–504.