**Martha Skidmore CLARK, Appellant,**

v.

**J.M. BENSON CO., INC., Appellee.**

**No. 85–1050.**

United States Court of Appeals, Fourth Circuit.

Argued Jan. 6, 1986.

Decided April 24, 1986.

Glen M. Fallin, Ellicott City, Md. (Julia Marrero-Brill, Westminster, Md., Richard W. Fancher, Baltimore, Md., on brief), for appellant.

Allen Poppleton (Meryl C. Weiser, Baltimore, Md., on brief), for appellee.

Before WINTER, Chief Judge, and SPROUSE and CHAPMAN, Circuit Judges.

HARRISON L. WINTER, Chief Judge:

Martha Skidmore Clark sued her former employer J.M. Benson Company, Inc. (Benson) for failure to pay overtime compensation in violation of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* At the close of plaintiff's case, the district court directed a verdict for Benson on the ground that Clark was, as a matter of law, an administrative employee exempt from the Act's protection. Clark appeals, claiming that the district court erred in allocating the burden of proof and evaluating the evidence relating to the Act's exemptions. We agree and therefore reverse.

## I.

Benson hired Clark in May 1980 to work as a bookkeeper for $250 per week, a figure raised to $275 some three months later. Clark was hired to work thirty-five hours per week with no overtime. The present dispute arose when one Estrella Nalda, Benson's controller and the person who hired Clark, resigned on November 30, 1980. Benson did not immediately replace Nalda, and Clark began performing her accounting duties. During the period beginning when Nalda left, until Benson hired a new controller in February 1981, Clark alleged that she worked substantially in excess of forty hours per week but received no overtime compensation.

At trial, a critical issue was whether Clark worked as an administrative employee who, under the Fair Labor Standards Act, is not entitled to overtime compensation. Much of Clark's testimony, upon direct and cross-examination, therefore concerned the nature of her work. Before Nalda left Benson, Clark described her duties as "[p]osting of journals, doing billings, accounts payable, [and] learn[ing] the computer" for payroll purposes. When Nalda left, Clark worked without immediate supervision. She undertook much of Nalda's work and her duties expanded to include "[t]yping up bills, making out bank deposits, recording cash receipts, handling the petty cash, checking prices on things that [Benson] sold, calculating hours that were worked against different jobs for [one of Benson's subsidiary corporations], [and] recording inventories...." In addition, she worked on the financial books, W–2 forms, account aging reports, payroll and commissions. During the period when Clark was essentially doing the work of two people, she often found it necessary to take work home with her, where it would sometimes remain for several days until she completed it.

On the basis of Clark's testimony, the district court found that she was an administrative employee as a matter of law, and directed a verdict for Benson. Before dismissing the jury, the district court denied Clark's motion to amend her complaint to allege a cause of action for breach of her contract to work only thirty-five hours per week.

## II.

The Fair Labor Standards Act generally requires payment of overtime compensation for hours worked in excess of forty hours in a work week. 29 U.S.C.

§ 207(a)(1). The Act, however, exempts certain categories of employees including those working in an "administrative capacity," as defined by regulations promulgated by the Secretary of Labor. The pertinent regulation, 29 C.F.R. § 541.2, defines administrative capacity according to one of two formulations, depending on how much money the employee earns. Clark conceded at oral argument that the "short test" of § 541.2(e)(2) governs her status because she earned more than $250 per week. Under § 541.2(e)(2), Clark is an administrative employee if (1) her "primary duty consists of the performance of ... office or nonmanual work directly related to management policies or general business operations of [her] employer or [her] employer's customers," and (2) that duty "includes work requiring the exercise of discretion and independent judgment."[1]

The basis of the district court's ruling was the failure of Clark to meet her burden of proving that she was not an administrative employee. It reasoned that Nalda was certainly an administrative employee, as a controller or comptroller would necessarily have a primary duty directly related to management policies or general business operations, so that when Clark undertook to perform Nalda's job in addition to her own, Clark became an administrative employee. The fact that Clark comprised the "entire accounting department" made her an "indispensable" employee, vital to the continuation of Benson's general business operations. The district court then reviewed the work Clark inherited from Nalda, such as preparation of W–2 forms and commission checks, and especially Clark's decisions as to the order in which to perform the various tasks and whether to complete work at home or in the office, and concluded that Clark's duties included work requiring the exercise of discretion and independent judgment.

## III.

◼ Benson incorrectly argues that we should apply the "clearly erroneous" standard to the district court's decision to direct a verdict for Benson. The proper standard of appellate review of a directed verdict was stated in *Kim v. Coppin State College,* 662 F.2d 1055, 1059 (4 Cir.1981) (*quoting Proctor v. Colonial Refrigerated Transportation, Inc.,* 494 F.2d 89, 93 (4 Cir.1974)): "[T]he district court is entitled to grant a directed verdict even though some evidence supports the opposite proposition so long as 'there are no controverted issues of fact upon which reasonable minds could differ.'" The question, therefore, is whether, on the basis of the evidence adduced, reasonable minds could differ as to the characterization of Clark as an administrative employee.

In addressing this question, we hold that the district court erred in assigning Clark the burden of disproving her administrative status. That burden rested on Benson, and we further hold that reasonable minds can differ as to whether Benson in fact proved the exemption's applicability. We therefore conclude that the direction of a verdict for Benson was reversible error.

## A.

The district court expressly placed on Clark the burden of proving that she was not an administrative employee, and hence, not exempt from the Act's protection. The district court justified this allocation of burden by reference to *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). In *Burdine,* the Supreme Court explained how the burden of producing evidence relating to discriminatory intent in Title VII cases shifts between the parties, while the ultimate burden of persuasion always rests on the plaintiff.

---

1. Unlike the more stringent "long test" for employees who earn less than $250 per week, *see* § 541.2(a)–(d), Clark need not "customarily and regularly" exercise discretion and independent judgment in 80 per cent of her work to be an administrative employee. Rather, her "primary duty" must consist of office or nonmanual work related to management policies or general business operations, and that duty must include work requiring discretion.

■ *Burdine* is inapplicable here. The statutory scheme of the Fair Labor Standards Act is entirely separate from Title VII, and the Supreme Court has established a different allocation of the burden of proof. The plaintiff employee must prove facts demonstrating a violation of some provision of the Act, as Clark makes out of violation of the maximum hours provision of 29 U.S.C. § 207(a)(1). But the exemptions are stated in a separate provision, § 213, and "the general rule [is] that the application of an exemption under the Fair Labor Standards Act is a matter of affirmative defense on which the employer has the burden of proof." *Corning Glass Works v. Brennan*, 417 U.S. 188, 196–97, 94 S.Ct. 2223, 2229, 41 L.Ed.2d 1 (1974). *See also Idaho Sheet Metal Works v. Wirtz*, 383 U.S. 190, 206, 86 S.Ct. 737, 747, 15 L.Ed.2d 694 (1966) (defendant employer has "the burden of establishing the facts requisite to an exemption"); *Walling v. General Industries Company*, 330 U.S. 545, 548–49, 67 S.Ct. 883, 884–85, 91 L.Ed. 1088 (1947) (defendant employer has "the burden of proving the existence of [the] conditions" of the "executive capacity" exemption).

We have previously spoken of the defendant employer as having "failed to meet its burden" to prove the applicability of one of the Act's exemptions. *Wirtz v. Charleston Coca Cola Bottling Company*, 356 F.2d 428, 430 (4 Cir.1966). More specifically, the Tenth Circuit has considered the very exemption at issue here, the "short test" of § 541.2(e). *See Donovan v. United Video, Inc.*, 725 F.2d 577 (10 Cir.1984). Relying on the Supreme Court's decision in *Walling*, the *Donovan* court concluded that "[t]he employer who asserts the [administrative employee] exemption has the burden of establishing both of [the § 541.-2(e)(2) ] requirements by clear and affirmative evidence." *Id.* at 581. *See also Jones v. Bethlehem-Fairfield Shipyard, Inc.*, 75

F.Supp. 86, 91 (D.Md.1947) ("the burden is on the defendant to show that the plaintiff employee was properly classified as exempt in accordance with ... the definition of 'executive or administrative' [employee]"). None of these cases state or imply that the defendant only bears the burden of producing some evidence demonstrating the exemption's applicability; rather, the defendant bears the full burden of persuasion for the facts requisite to an exemption.

The district court therefore erred in persistently framing the issue as whether Clark met her burden to disprove her administrative status. Its error could be harmless, however, if Clark's own testimony demonstrated that her primary duty directly related to management policies or general business operations, and included the exercise of discretion and independent judgment. We are, however, not convinced that Benson met this burden.

## B.

■ The administrative capacity exemption first requires that the employee's "primary duty" consist in the performance of office or nonmanual work "directly related to management policies or general business operations." The regulations state that "primary duty" means "the major part or over 50 percent" of the employee's time. 29 C.F.R. §§ 541.103, 541.-206(b).[2] Clark's testimony and the district court's decision focused almost exclusively on the nature of the additional work Clark undertook when Nalda resigned. It is important to note, however, that Clark was originally hired as a bookkeeper, and she continued performing her bookkeeping tasks after Nalda left. The regulations further state that "it is clear that *bookkeepers*, secretaries, and clerks of various kinds hold the run-of-the-mine positions in any ordinary business and are not performing work directly related to management

---

**2.** More specifically, the Regulations state that the 50 per cent definition of an employee's "primary duty" is "a good rule of thumb." 29 C.F.R. §§ 541.103, 541.206(b). The district court gave no reason to deviate from this rule of thumb,

and to do so requires consideration of the factual circumstances for which a jury is more appropriate. We therefore apply the 50 per cent rule in evaluating the evidence of Clark's "primary duty."

policies or general business operations." 29 C.F.R. § 541.205(c)(1) (emphasis added). There is nothing in Clark's testimony to suggest that, as a matter of law, the work for which she was originally hired exceeded ordinary bookkeeping functions. She merely stated that before Nalda resigned, her duties included "[p]osting of journals, doing billings, accounts payable, [and] learn[ing] the computer" for payroll purposes. Because her original thirty-five hour per week job was apparently not administrative, she could not have reached an administrative status by undertaking Nalda's duties unless those additional duties comprised over 50 per cent of her work time.

The district court concluded that Clark spent nearly 100 per cent of her time on duties "directly related to management policies or general business operations." But upon reviewing the record, we think it clear that the district court included in that amount the bookkeeping work Clark performed even before Nalda departed. The district court thus focused on the administrative nature of Clark's *additional* duties without expressly considering whether these new duties required over 50 per cent of Clark's work time and thus constituted her "primary duty." Clark's testimony does not clearly indicate how her time was apportioned, so we cannot conclude, as a matter of law, that over 50 per cent of her work time was directly related to administrative functions.

Benson presses the district court's conclusion that Clark was an "indispensable" employee, and for this reason, that her primary duty was "directly related to management policies or general business operations." But while Clark may have held an indispensable position because she represented the entire accounting department, this fact is insufficient to prove that her primary duty was administrative as a matter of law. Certainly secretaries and clerks, where a business employs only one, may be "indispensable." Yet the regulations generally exclude those "run-of-the-mine" jobs from administrative classification. The regulations emphasize the *nature* of the work, not its ultimate consequence.[3] Thus, Clark's apparent indispensability does not obviate the need to prove independently that 50 per cent of her work time is "directly related to management policies or general business operations."

We must conclude, therefore, that Benson did not meet *its* burden of proving, to the point beyond which reasonable minds could differ, the facts requisite to establishing the first element of the administrative exemption.

### C.

◼ The second prong of the § 541.2(e)(2) "short test" for administrative status requires that Clark's primary duty "include[ ] work requiring the exercise of discretion and independent judgment." The district court found that Clark exercised discretion and independent judgment in deciding when and where to do different tasks, as well as the manner in which to perform them. In emphasizing the discretion involved in choosing the order in which to perform different tasks, and whether to complete certain tasks at home or in the office, we think the district court exaggerated the significance of the discretion Clark exercised. The regulations recognize that almost every employee exercises some discretion, as for example in selecting the

---

**3.** For example, the regulations note that many employees, such as messengers, machine operators and inspectors, are in a position where their negligence could cause great loss to the company, but such work is not of "such substantial importance to the management or operation of the business that it can be said to be 'directly related to management policies or general business operations....'" 29 C.F.R. § 541.205(c)(2).

Further, the regulations state that the fact that many employees perform the same work does not affect the determination of the administrative employee test, so long as their work is of substantial importance to business operation. Benson is claiming that the converse is true, that because Clark was the only accountant, she was administrative, even if less than 50 per cent of her work was "directly related to management policies or general business operations." We are not persuaded by its argument.

order in which to perform different duties.[4] To demonstrate administrative status, however, "the discretion and independent judgment exercised must be real and substantial, that is, they must be exercised with respect to matters of consequence." 29 C.F.R. § 541.207(d)(1).

We do not think that the evidence establishes, as a matter of law, that Clark exercised discretion as to "matters of consequence." Though the decision to take work home is probative of the existence of "real and substantial" discretion, it is not wholly determinative because the critical issue is the nature of the work. A secretary, for example, may take home written work for proofreading that could not be completed in the normal work week. But in such a case, or in this one, the employee's initiative to complete work outside the office to meet the employer's expectations does not necessarily constitute an exercise of discretion "with respect to matters of consequence." Otherwise, the employer has the incentive to assign more work than can be accomplished in a forty-hour work week, without explicitly asking the employee to work overtime at home, so that employees who take such initiative will become "administrative" and lose any right to overtime compensation.

■ Nor does the decision of which monthly report or document to prepare first, for example, when to prepare the commission checks, involve such "real and substantial" discretion as to take the issue away from a jury. We believe a jury could have found that Clark's decisions as to the timing of various reports were strictly limited by an obvious cycle of monthly deadlines. Within this time frame, the jury could have reasonably found that the tim-

ing decision was not a "matter of consequence."

■ The significant factor in evaluating the presence of "real and substantial" discretion in an employee's work, is the nature of the work itself. The district court found that Clark's work included tasks, such as preparing commission checks and W–2 forms, that involved real discretion. Clark's testimony regarding the W–2 forms, however, merely indicates that she combined the information listed on two computer printouts to fill out the W–2 forms. Clark also testified that she prepared commission checks, but unlike Nalda, she did not sign the checks. All payroll had to be authorized by a Mr. Jack Benson. Though these activities may go beyond simple bookkeeping, we cannot agree with the district court that this testimony proves as a matter of law that Clark exercised "real and substantial" discretion. *See Donovan v. Shell Oil Co., Inc.*, 168 F.2d 229, 232 (4 Cir.1948) (preparation of certain reports requiring "some learning and ability" did not demonstrate discretion).

### IV.

■ Since we reverse and grant a new trial, two other issues raised by Clark deserve comment. At trial, after the district court decided to direct a verdict for Benson on the Fair Labor Standards Act issue, Clark moved, under Fed.R.Civ.P. 15(b), to amend her pleadings to include a breach of contract claim, in conformity with the evidence adduced that Benson contracted with Clark to work just thirty-five hours per week. Since a new trial is necessary, we express no view as to whether the district court abused its discretion in denying leave to amend on the ground that it would have unfairly surprised the defendant Benson.

---

4. The regulations state:

In one sense almost every employee is required to use some discretion and independent judgment. Thus, it is frequently left to a truckdriver to decide which route to follow in going from one place to another; the shipping clerk is normally permitted to decide the method of packing and the mode of shipment of small orders; and the bookkeeper may usually decide whether he will post first to one ledger rather than another. Yet it is obvious that these decisions do not constitute the exercise of discretion and independent judgment of the level contemplated by the regulations.... [D]ecisions of this nature concerning relatively unimportant matters are not [administrative]....

29 C.F.R. § 541.207(d)(1).

On retrial there can be no such surprise, and the district court should grant a timely motion to amend the complaint and permit the merits of the contract claim to be tried.

Clark also contends that the district court erred in refusing to permit Clark to refresh her recollection of the hours of overtime she worked by reference to non-contemporaneous notes made in a conversation with her attorney. Although Clark correctly states that noncontemporaneous notes *may* be used to revive a memory, a trial court "has considerable discretion at various points to reject the testimony either ... by holding ... that the writing does not refresh [the] memory, or ... [that] 'the danger of undue suggestion ... outweigh[s] the probable value.'" 3 Weinstein's Evidence ¶ 612[01] (1985) (*quoting* McCormick on Evidence § 9 at 17 (E. Cleary ed. 1972)) Clark does not show that the district court abused its discretion in refusing to permit her to refresh her memory with these particular notes, and we think that on retrial the district court should continue to exercise its discretion as it deems proper.

REVERSED AND REMANDED.