**Alfred R. TURNER, III, et al.**

v.

**HUMAN GENOME SCIENCES, INC.**

**No. CIV.A.DKC 2001–3580.**

United States District Court,
D. Maryland.

Nov. 7, 2003.

Philip B. Zipin, Zipin Melehy and Driscoll LLC, Silver Spring, MD, Stephanie Lane Hillman, Neil R. Lebowitz, Zipin Melehy and Driscoll LLC, Laurel, MD, for Plaintiffs.

Theresa M. Connolly, Piper Rudnick LLP, Reston, VA, Karen Ellen Gray, Morgan Lewis and Bockius LLP, Washington DC, for Defendant.

## MEMORANDUM OPINION

CHASANOW, District Judge.

Presently pending and ready for resolution in this action brought under the Fair Labor Standards Act, ("FLSA"), 29 U.S.C.A. § 201–209, and Maryland's Wage and Hour Law ("MWHL"), Md.Code Ann., Lab. & Empl., § 3–403 *et seq.*, are the following motions: (1) the motion of Plaintiffs Alfred Turner and Keven Welch to strike Defendant's unsworn expert report and (2) the motion of Defendant Human Genome Sciences, Inc. ("HGS") for summary judgment. The issues have been briefed and no hearing is deemed necessary. *See* Local Rule 105.6. For the rea-

sons that follow, Plaintiffs' motion to strike will be granted and Defendant's motion for summary judgment will be denied.

## I. Background

The following facts are either uncontroverted or taken in the light most favorable to Plaintiffs. Plaintiffs were employed by HGS as Systems Support Technicians ("SST"). Plaintiff Turner worked as an SST from January 1996 until November 2001 at a salary of $47,840 per year. Plaintiff Welch was first hired in 1995 as a laboratory assistant and, from July 1998 until July 2001, filled the position of SST with a salary ranging from $42,120 to $43,804.80 per year. As members of HGS's Information Technology group, Plaintiffs were responsible primarily for supporting HGS employees ("end users") by troubleshooting and correcting problems with their technological equipment, including computer and phone systems. Plaintiffs' primary duties essentially included troubleshooting hardware and/or software problems as well as network connectivity issues. See Paper 30, at 10. Plaintiffs' duties as technicians did not involve creating, designing or developing any software programs for HGS, nor did they have purchasing power. Moreover, Plaintiffs did not have any involvement in the creation or maintenance of the various informational databases used by the various HGS departments and they had very limited interaction with the numerous pieces of scientific equipment and machinery in use at HGS. See id. at 18–19.

In addition to their work on HGS's computer and network systems, Plaintiffs also had duties related to the company's phone system. Plaintiffs were responsible for the initial installation and set-up of phones for end-users who had recently joined the company or had moved from one office to another. In fulfilling these duties, Plaintiffs would follow a standardized set of procedures that had been created by the vendor of the phone system and approved by their supervisor, Mr. Carpenter. See paper no. 30, at 14. Plaintiffs did not manipulate the computer program associated with the phone system and performed only minimal troubleshooting. When problems with the system arose, outside service people would be contacted to perform any necessary repairs. See id.

In addition to the duties required of all SSTs, both Plaintiffs had individual, albeit limited, duties for which they were responsible. Plaintiff Turner had the added responsibility of performing back-ups for the HGS systems and, for a limited amount of time, was the main technician for the telephone system. Plaintiff Welch was responsible for troubleshooting and seeking outside help for problems concerning the accounting department systems.

Both Plaintiffs contend that during certain periods of their employment, they worked overtime for HGS without compensation and in violation of the FLSA and MWHL.[1] Specifically, Plaintiff Turner contends that, by working an average of 50 hours per week during the period of November 1998 through November 2001, he worked approximately 1560 hours of overtime for HGS for which he claims to be owed $54,000 in unpaid wages. Plaintiff Welch contends that, from August 30, 1999 until July 20, 2001, he worked an average of 60 hours per week for which he is owed approximately $60,000 in unpaid overtimes wages. Both Plaintiffs are also requesting

---

1. Plaintiff Turner filed his Complaint against HGS on November 26, 2001 and moved for authorization and facilitation to notify other potential plaintiffs who may have been improperly denied compensation by HGS for overtime hours worked. In response to the court-authorized notice sent out by Plaintiff Turner, Plaintiff Welch joined the lawsuit on August 30, 2002. No other individuals were added as plaintiffs.

$54,000 and $60,000 respectively in liquidated damages, plus attorney's fees and other litigation costs. Defendant seeks summary judgment in their favor on the ground that Plaintiffs are "exempt" employees under both the FLSA and MWHL and are therefore not entitled to overtime compensation. Additionally, Plaintiffs have moved to strike an unsworn expert report filed as an attachment to Defendant's reply brief on the ground that it is not properly before the court under Rule 56 of the Federal Rules of Civil Procedure.

## II.   Standard of Review

It is well established that a motion for summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In other words, if there clearly exist factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," then summary judgment is inappropriate. *Anderson*, 477 U.S. at 250, 106 S.Ct. 2505; *see also Pulliam Inv. Co. v. Cameo Properties*, 810 F.2d 1282, 1286 (4th Cir.1987); *Morrison v. Nissan Motor Co.*, 601 F.2d 139, 141 (4th Cir.1979); *Stevens v. Howard D. Johnson Co.*, 181 F.2d 390, 394 (4th Cir.1950). The moving party bears the burden of showing that there is no genuine issue as to any material fact. FED. R. CIV. P. 56(c); *Pulliam Inv. Co.*, 810 F.2d at 1286 (citing *Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir.1979)).

When ruling on a motion for summary judgment, the court must construe the facts alleged in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); *Gill v.*

*Rollins Protective Servs. Co.*, 773 F.2d 592, 595 (4th Cir.1985). A party who bears the burden of proof on a particular claim must factually support each element of his or her claim. "[A] complete failure of proof concerning an essential element ... necessarily renders all other facts immaterial." *Celotex Corp.*, 477 U.S. at 323, 106 S.Ct. 2548. Thus, on those issues on which the nonmoving party will have the burden of proof, it is his or her responsibility to confront the motion for summary judgment with an affidavit or other similar evidence. *Anderson*, 477 U.S. at 256, 106 S.Ct. 2505.

## III.   Analysis

### A.   Plaintiffs' Motion to Strike

Plaintiffs have moved to strike the unsworn expert report of Travis M. Campbell attached as exhibit 4 to Defendant's reply memorandum (paper no. 33). Plaintiffs are correct to recognize that "[u]nsworn pleadings do not satisfy Rule 56(e)'s requirements for summary judgment proof." *Metropolitan Life Ins. Co. v. Hall*, 9 F.Supp.2d 560, 561 (D.Md.1998). Thus, unsworn statements or expert reports do not qualify as affidavits and are not proper for consideration by the court when ruling on a motion for summary judgment. *See Solis v. Prince George's County*, 153 F.Supp.2d 793 (D.Md.2001) (citing *Orsi v. Kirkwood*, 999 F.2d 86, 92 (4th Cir.1993)). While there may be cases in which a court will "properly consider unsworn or uncertified copies of documents which are not challenged by the opposing party," defendant's unsworn expert report has been attacked by Plaintiffs and, therefore, must be stricken. *McLaughlin v. Copeland*, 435 F.Supp. 513, 521 (D.Md.1977). It is also important to note that, even had the report been properly supported or simply considered in its current form, it would not have affected the outcome of this case. Mr. Campbell's

report, in effect, merely summarizes the conclusions contained in his deposition testimony, which, when considered against the weight of the entire record, do not alter the court's findings regarding whether, as a matter of law, Plaintiffs are exempt employees. Thus, Plaintiffs' motion to strike Defendant's unsworn report will be granted.

### B. Motion for Summary Judgment

Under both the FLSA and MWHL, employers are required to pay overtime for any employee who works over forty hours a week. 29 U.S.C.A. § 207(a) (1998); Md.Code Ann., Lab. & Empl., § 3–415(1999 Repl.Vol.). Both statutes, however, exempt certain categories of employees, including those working in a "bona fide executive, administrative or professional capacity." 29 U.S.C.A. § 213(a)(1); Md.Code Ann., Lab. & Empl., § 3–403. Both statutes also rely on regulations to define and interpret the exemption provisions.

■■■ The FLSA was enacted by Congress as a remedial act and, therefore, its exemptions must be narrowly construed. *See Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392, 80 S.Ct. 453, 4 L.Ed.2d 393 (1960). The burden of proving, with plain and unmistakable evidence, that an employee falls within an exempted category of the FLSA is on the employer. *Id.; see also Wirtz, v. Modern Trashmoval, Inc.*, 323 F.2d 451, 464 (4th Cir.1963). Under

regulations promulgated by the Secretary of Labor,[2] whether an employee qualifies for an administrative exemption under § 213 is determined according to one of two tests, depending on how much money the employee earns. Both parties agree that the "short test" governs the determination of their status because each earned more than $250 per week. Under the "short test," an employee is exempt from the Act's overtime provisions if (1) the employee's primary duty consists of "the performance of office or non-manual work directly related to management policies or general business operations of the employer," and (2) the employee's "performance of such primary duty includes work requiring the exercise of discretion and independent judgment." 29 C.F.R. § 541.214 (2003).[3] The requirements under the MWHL mirror those of the federal law; as such, Plaintiffs' claim under the MWHL stands or falls on the success of their claim under the FLSA. Thus, both counts of Plaintiffs' complaint require Defendant to establish that Plaintiffs' primary duties satisfy each element of the short test.

### 1. Primary Duty Directly Related To Managing Policies or General Business Operations

■■■ The first inquiry under the short test is whether Plaintiffs' primary duties as SSTs involved the performance of office or non-manual work "directly related to management policies or general business operations." 29 C.F.R. § 541.2.[4] The ex-

2. The Secretary's power to promulgate regulations under the FLSA is pursuant to an express grant of authority from Congress and, as a result, the regulations have the force and effect of law.

3. The alternative test, the "long test," applies when an employee earns less than $250 per week, and requires a showing that the employee "customarily and regularly" exercises discretion and independent judgment in 80 percent of his work.

4. Establishing a "primary duty" requires "proof either that the employee spends half his time on administrative duties or that administrative duties have special significance relative to the employee's other duties." *Shockley v. City of Newport News*, 997 F.2d 18, 28 (4th Cir.1993). The parties do not dispute whether their duties were "primary duties" as provided for under the FLSA and the accompanying regulations. The parties do dispute, however, whether the work performed by Plaintiffs is office or non-manual

emption for an employee whose work is "directly related" is limited to those performing work of "substantial importance to the management or operation of the business of his employer or his employer's customers." § 541.205(a). An employee's work is of "substantial importance" if he participates in the formulation of management policies or in the operation of the business as a whole, or he affects policy or has the responsibility to execute or carry it out. § 541.205(c). Moreover, it is possible that an employee's job can be viewed as "indispensable" and still not reach the degree of "substantial importance" necessary to establish the "directly related" element. *Clark v. J.M. Benson, Co., Inc.*, 789 F.2d 282, 287 (4th Cir.1986). Thus, the determination really turns on the "*nature* of the work, not its ultimate consequences." *Id.* (emphasis in original).

■ Defendant argues that Plaintiffs' duties were of substantial importance to HGS's business operations as "HGS could not operate its business without the smooth operation of the computer, telephone and network systems." Paper 25, at 29. Plaintiffs, however, argue that Defendant overstates the importance of their troubleshooting duties to the operation of HGS's business and that Plaintiffs simply provided the standard computer support required by all modern businesses.

Guided by the regulations, this court finds that the evidence does not conclusively demonstrate that Plaintiffs' primary duties were administrative as required for an administration exemption under § 213. Plaintiffs were not members of a team whose job was to design, develop or implement any type of computerized information system supporting the work efforts of the

researchers at HGS. *See Burke v. County of Monroe*, 225 F.Supp.2d 306, 320 (W.D.N.Y.2002); *Lutz v. Ameritech Corp.*, 208 F.3d 214, 2000 WL 245485, *3 (6th Cir.2000). Nor did Plaintiffs provide services to the company similar or analogous to those referenced in the regulations, such as "advising the management, planning, negotiating, representing the company, purchasing, promoting sales, and business research and control." 29 C.F.R. § 541.205(b). Rather, Plaintiffs were simply the technicians who keep the company's overall computer and technological systems operating. Maintaining a computerized business is, in this day, part of every company's day-to-day operations and nothing in the record establishes that Plaintiffs had substantial involvement in anything more than general computer operating software and hardware. *See* Turner Depo. at 84, 116–17, 196–97 (testifying that he sought assistance from service people when problems arose with various programs and that the scientific departments generally dealt with vendors directly for assistance). Thus, Plaintiffs' work was "production" work, not work related to the administrative operations of HGS. *See* 29 C.F.R. 541.205(a); *Bratt v. County of Los Angeles*, 912 F.2d 1066, 1070 (9th Cir.1990) (activities must be directly related to "the running of a business and not merely the day-to-day carrying out of its affairs"), *cert. denied*, 498 U.S. 1086, 111 S.Ct. 962, 112 L.Ed.2d 1049 (1991).

■ In arguing that the upkeep of HGS's computer system was essential to its business operations, Defendant overlooks that the nature of the employee's work, and not the possible results or con-

work. Even assuming that Plaintiffs' work was primarily non-manual, HGS must still demonstrate that Plaintiffs' work related to management or general business operations. *See* 29 C.F.R. § 541.202(a). As HGS has

failed to meet its burden with respect to the "directly related to" prong of the short test, the court need not address at this time whether Plaintiffs' work was primarily non-manual.

sequences, is the focal point of the regulations. *See Dalheim v. KDFW–TV,* 706 F.Supp. 493, 508 (N.D.Tex.1988) (citing *Clark,* 789 F.2d at 287). The importance of troubleshooting, maintaining or backing up a company's computerized systems is not undermined. However, that a problem in HGS's computer system resulting from a System Support Technician's failure to do his job properly could result in serious loss or consequences is not enough to establish that Plaintiffs' work is of "such substantial importance to the management or operation of the business that is can be said to be 'directly related to management policies or general business operations.'" *Dalheim,* 706 F.Supp. at 508; 29 C.F.R. § 541.205(c)(2).

■■■ Such a finding is further supported by the Department of Labor's Wage and Hour Division Opinion Letters.[5] In a letter dated May 11, 2001, the Department of Labor addressed an inquiry regarding an employee whose primary duty was to "identify computer solutions to fit the need of a variety of local business ... [and not to] design, create or modify the systems or programs." Opinion Letter, Wage and Hour Div., 2001 WL 1558967 (Dep't Labor May 11, 2001). Based on that description, the Department opined "that this employee does not meet the duties requirements for any of the exemptions." *Id.* Similarly, in an opinion letter dated December 4, 1998, the Department of Labor stated that employees in computer related occupations were not entitled to exempt status when their duties were to "analyze software and provide technical support for business users by loading and implementing programs to business' computer networks, educating employees on how to use the programs and by aiding

them in troubleshooting." Opinion Letter, Wage and Hour Div., 1998 WL 1147741 (Dep't Labor Dec. 4, 1998).

Similar to the situations addressed in the opinion letters, Plaintiffs' primary duties were to provide technical support to HGS's employees by loading, monitoring and troubleshooting general software programs. Viewing the evidence in the light most favorable to Plaintiffs, HGS has not met its burden of proving, as a matter of law, that Plaintiffs' duties were directly related to the management or the business operations of HGS.

**2. Discretion and Independent Judgment**

Defendant has also failed to establish the final prong of the short test: that Plaintiffs exercised discretion and independent judgment when performing their job duties. Under the regulations, the phrase "discretion and independent judgment" involves:

the comparison and the evaluation of possible courses of conduct and acting or making a decision after the various possibilities have been considered. The term ... implies that the person has the authority or power to make an independent choice, free from immediate direction or supervision and with respect to *matters of significance.*

29 C.F.R. § 541.207(a)(2003) (emphasis added). The regulations recognize that this phrase is often confused with the "use of skill in applying techniques, procedures, or specific standards" and misapplied "to employees making decisions relating to matters of little consequence." 29 C.F.R. § 541.207(b). In so noting, the regulations distinguish the "exercise of discretion and

**5.** Although the Department's Opinion Letters are not binding and do not have the force and effect of law, they constitute a body of experience and informed judgment. Therefore, they are entitled to considerable weight and the court may properly resort to them for guidance. *Schultz v. W.R. Hartin & Son, Inc.,* 428 F.2d 186, 191 (4th Cir.1970).

independent judgment" and the "use of skill," explaining that:

> [p]erhaps the most frequent cause of misapplication of the term "discretion and independent judgment" is the failure to distinguish it from the use of skill in various respects. An employee who merely applies his knowledge in following prescribed procedures or determining which procedure to follow ... is not exercising discretion and independent judgment within the meaning of § 541.2.

29 C.F.R. § 541.207(c)(1).

Defendant contends that Plaintiffs exercised discretion when troubleshooting HGS's internal technological systems, including completing tasks such as diagnosing various problems, considering alternative solutions, and determining and implementing solutions that they believed to be the best alternative. Plaintiffs counter that, while these tasks undoubtedly involved skill, they did not involve the level of discretion as required under the regulations.

█ Admittedly, almost all work involves some level of discretion and independent judgment. *See* 29 C.F.R. § 541.207(d)(1). The regulations, however, are clear that exempt status requires that "discretion and independent judgment must be real and substantial, that is, they must be exercised with respect to matters of consequence." *Id.* This level of discretion and independent judgment generally refers to those "decisions normally made by persons who formulate policy within their spheres of responsibility or who participate in this process or who exercise authority to commit the employer in a substantial respect, financial or otherwise." *Cooke v. General Dynamics Corp.,* 993 F.Supp. 56, 65 (D.Conn.1997) (citing 20 C.F.R. § 541.207(d)(2)).

█ Despite Defendant's attempt to categorize Plaintiffs' actions of deciding how and when to address and resolve a system problem as an adequate exercise of discretion, such acts are not sufficient under the regulations or relevant, and published, case law. This circuit has recognized that deciding the order in which to perform different duties is not an adequate display of discretion. *Clark,* 789 F.2d at 287–88. Nor is following or choosing between a set of "techniques, procedures, repetitious experience, and specific standards to perform their work." *Dalheim,* 706 F.Supp. at 508. While Plaintiffs certainly utilized their own knowledge and skill to solve computer problems, their primary duties did not involve discretion or independent judgment as required under the regulations. In troubleshooting software and network problems, Plaintiffs typically followed a systematic approach or referred the problem to more skilled technicians. *See* Turner Depo. at 136, 142 (testifying that he approached problems through "normal routine" and that technicians generally followed the "same standard as far as troubleshooting"); *see also* Welch Depo. at 320; Carpenter Depo. at 112–13. While Plaintiffs could prioritize the order in which they dealt with problems, they were required to address help requests within a certain amount of time, and when setting up computer systems for end users, they were required to follow standards set by each department. *See* Carpenter Depo. at 50–51. The evidence does not establish that Plaintiffs were involved in the making of any policy or had latitude to work or act without supervisory approval, or on behalf of the company, with regard to matters of any consequence. *See* Turner Depo. at 83, 100–02; Carpenter Depo. at 89–90. Thus, Defendant has failed to establish, as a matter of law, that Plaintiffs, as System Support Technicians, are exempt as administrative employees.

### 3. Overtime Calculation

 Finally, Defendant argues that Plaintiffs have failed to prove they actually worked the estimated number of overtime hours for which they seek compensation.[6] When records of the exact number of hours worked by an employee are unavailable, resolution of this issue turns on the applicable burden of proof. *See Donovan v. Kentwood Dev. Co., Inc.*, 549 F.Supp. 480, 485 (D.Md.1982). In the absence of an exact record of hours, an employee seeking overtime compensation under the FLSA must prove "that he has in fact performed work for which he was improperly compensated." *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687, 66 S.Ct. 1187, 90 L.Ed. 1515 (1946). "A prima facie case can be made through an employee's testimony giving his recollection of hours worked ... [and his case] is not to be dismissed nor should recovery for back pay be denied, because proof of the number of hours worked is inexact or not perfectly accurate." *Donovan*, 549 F.Supp. at 485. Once the employee produces evidence of the amount and extent of work, the burden shifts to the employer to "come forward with evidence of the exact number of hours worked or with evidence to negate the reasonableness of the inference to be drawn from the plaintiff's evidence." *Id* (citing *Anderson*, 328 U.S. at 687, 66 S.Ct. 1187).

 Both Plaintiffs have testified to the hours of overtime they worked while employed by HGS. Although they have not provided evidence corroborating their testimony, they have carried their initial burden of proof and established a prima facie case. Defendant has not, at this stage, produced evidence contradicting or rebut-ting the inference drawn from Plaintiffs' testimony. Thus, Defendant has not established as a matter of law that Plaintiffs cannot prove they worked more than 40 hours per week.

### IV. Conclusion

Based on the foregoing reasons, Plaintiffs' motion to strike Defendant's unsworn report will be granted and Defendant's motion for summary judgment will be denied. A separate order will follow.

---

**6.** Defendant also claims that, if Plaintiffs are entitled to compensation, they are only entitled to an additional 1/2 the regular rate of pay and not the additional 1½ as Plaintiffs claim. Defendants have not established the facts necessary to support such a contention, and the court will defer a determination of damages, in terms of the number of hours worked and the exact amount owed, until a later time.