**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 11-2213**

DOROTHY ALTEMUS,

            Plaintiff - Appellant,

      v.

FEDERAL REALTY INVESTMENT TRUST; DONALD WOOD, in his
individual capacity,

            Defendants - Appellees.

Appeal from the United States District Court for the District of
Maryland, at Greenbelt.   Peter J. Messitte, Senior District
Judge. (8:10-cv-02751-PJM)

Submitted: July 9, 2012                Decided: July 31, 2012

Before AGEE, DAVIS, and WYNN, Circuit Judges.

Affirmed by unpublished per curiam opinion.

Laurence S. Kaye, THE KAYE LAW FIRM, Rockville, Maryland; Julie
G. Martin-Korb, Rockville, Maryland, for Appellant.   Christine
Nicolaides Kearns, PILLSBURY WINTHROP SHAW PITTMAN LLP,
Washington, DC, for Appellees.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Dorothy Altemus brought suit against her former employer, Federal Realty Investment Trust ("FRIT"), and her supervisor, Donald Wood, for payment of overtime compensation under the Fair Labor Standards Act ("FLSA"), 29 U.S.C.A. §§ 201-219 (West 1998 & Supp. 2011), and the Maryland Wage and Hour Law ("MWHL"), Md. Lab. & Empl. Code Ann. §§ 3-401 to 3-431 (2009). The district court granted the Defendants' motion for summary judgment, finding that Altemus qualified as an exempt administrative assistant working for a senior executive of a large business, and Altemus now appeals. We have reviewed the record and find no reversible error. Accordingly, we affirm.

FRIT is an equity real estate investment trust specializing in the ownership, management, development, and redevelopment of high quality retail assets. FRIT had approximately 450 employees in 2007; 379 employees in 2008; and 383 employees in 2009. From September 2003 until March 2010, FRIT employed Altemus as the sole executive assistant to Donald Wood, CEO and President of FRIT. In addition, from 2008 until March 2010, Altemus worked as the sole executive assistant to Dawn Becker, General Counsel and COO of FRIT. Although FRIT employed between ten and fourteen executive assistants during this period, Altemus was the only executive assistant classified as exempt.

2

Altemus' base salary was $84,000 in 2007, with a $12,146 annual bonus; in 2008, 2009, and 2010, her base salary was $86,520, with an annual bonus of $6,489 in 2008 and $12,978 in 2009. In addition, Wood routinely gave Altemus a $5,000 personal check at the end of the year. Comparatively, the base salary for each of the other executive assistants was less than $60,000 during this time period. Altemus was the only executive assistant at FRIT to participate in the 15% annual bonus pool, while all other executive assistants were in the 7% bonus pool. FRIT also gave Altemus the option to purchase FRIT stock in 2004 and 2005; in 2005, Altemus was the only executive assistant to be given the option of receiving stock options in lieu of an increase in salary.

At the time she was hired in 2003, the job description for the Executive Assistant to the CEO stated that Altemus was to "[p]rovide high, executive-level support to the CEO." The position required five to ten years of previous experience and listed the following responsibilities:

> Manage the day-to-day business activities of [the] CEO; demonstrate the ability to handle confidential information with discretion; prioritize and handle internal and external correspondence; screen incoming calls in the most professional manner; schedule meetings and maintain daily and long-term calendar; coordinate Trustees meetings and materials preparation; make all necessary travel arrangements; create and maintain comprehensive filing system; handle all incoming and outgoing mail; maintain

3

coordination of all external board participation activities.

During Altemus' employment with FRIT, Wood spent approximately 30 percent of his time on business travel. Altemus coordinated Wood's travel arrangements and monitored his email and communications as necessary while he was away from the office. In addition, Altemus assisted Wood in his work with a number of professional organizations, including his roles as an active member of the Board of Governors of the National Association of Real Estate Investment Trusts ("NAREIT") and the U.S. Capital Chapter of the Young President's Organization ("YPO"). Altemus also assisted Wood with his role as Chairman of the Metro D.C. Chapter of the Cystic Fibrosis Foundation ("CFF"), a charitable organization in which Wood participated for both personal and business reasons.

Altemus alleged that her administrative tasks as the sole executive assistant to Wood typically took no more than 20 to 25 percent of her time, while her responsibilities for performing personal work for Wood and his family required 75 to 80 percent of her time. With respect to personal tasks performed for Wood and his family, Altemus indicated that she planned his annual personal holiday party, scheduled doctors appointments, managed his personal travel, purchased tickets to sporting and theatre events, occasionally picked up his children

4

from school, and assisted Wood with his role as little league coach for his son's baseball team for two seasons, among other tasks. In addition, Altemus stated that she spent a significant amount of her time working on projects related to the CFF, work that she claimed was unrelated to the management of FRIT. Altemus further alleged that her work as Wood's executive administrative assistant "involved only minimal exercise of discretion or independent judgment," as "Wood often micro-managed tasks and took control of even the most basic decision making of those tasks."

During Altemus' tenure with FRIT, Wood completed performance reviews in 2005, 2007, and 2009 addressing Altemus' strengths and weaknesses. Altemus reviewed each performance review before signing it, and never objected to the content or substance of the reviews. In her 2005 performance review, Wood stated that Altemus "truly has become my right arm when it comes to organizing and administering all aspects of business at Federal," describing Altemus as "critical to the continued success of the overall office environment and my ability to be organized and prioritize." In Altemus' 2007 performance review, Wood praised Altemus' "superior interpersonal skills and intelligence," stating:

> I can honestly say that, in the four years that she has been with [FRIT], every decision that I have ever seen her make has been made with her strong internal

5

> belief that it is in the best interest of the company and of the CEO's office. As a result, I give Dorothy more leeway to make decisions than I have ever given to an assistant before.

In addition, Wood stated: "I have never had a more complete partner in my 25 year professional career. Dorothy's scope of responsibilities are broad, as she truly assists me in all of the professional areas of my career that are important to my overall success as the CEO of the Trust."

In her Complaint, Altemus alleged that she worked in excess of forty hours per week during her tenure with FRIT, but was not provided overtime compensation, in violation of the FLSA and the MWHL. In addition, counsel for Altemus filed a Fed. R. Civ. P. 56(d) affidavit requesting additional discovery related to the earnings of all individuals classified as executive assistants, any documents discussing the reasons for Altemus' salary and earnings increases, all documents in which CFF was referred to in any way, and documents referring to the duties of the executive assistants, as well as the opportunity to depose both Wood and Becker, who provided declarations. Following a hearing, the district court denied Altemus' request for additional discovery and granted the Defendants' motion for summary judgment, finding that Altemus fell within the executive administrative assistant exemption from the FLSA's overtime requirement.

The court rejected Altemus' argument that the "50 Percent Rule" governed the court's analysis of Altemus' "primary duty," finding that employees may indeed qualify for the FLSA's administrative exemption if they devote less than half of their time to administrative duties. Moreover, the court rejected Altemus' allegation that she only spent 20 to 25 percent of her time completing administrative duties directly related to the management of FRIT and exercised little to no discretion, finding this proposition directly contradicted by the record, including the job description for the executive administrative assistant position and the performance reviews completed by Wood describing Altemus' responsibilities. The court likewise rejected Altemus' claim that her work assisting Wood in his role as Chairman of the Metro D.C. Chapter of the CFF was personal, as Wood stated in Altemus' 2007 performance review that his work for the CFF "added to [FRIT's] reputation as a more complete company" and "expanded relationships with many of the key real estate assistants." The court therefore held that Altemus fell within the executive administrative assistant exemption to the FLSA and was not entitled to overtime wages.

Altemus timely appealed, arguing that the district court erroneously awarded the Defendants summary judgment. We review the district court's grant of summary judgment de novo. Jennings v. Univ. of N.C., 482 F.3d 686, 694 (4th Cir. 2007) (en

7

banc).  Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts."  Scott v. Harris, 550 U.S. 372, 380 (2007) (internal quotation marks and citation omitted).  However, "a nonmovant cannot defeat summary judgment with merely a scintilla of evidence."  Blaustein & Reich, Inc. v. Buckles, 365 F.3d 281, 286 (4th Cir. 2004).

Section (7)(a)(1) of the FLSA requires that employers pay their employees time and a half for work over forty hours a week.  29 U.S.C. § 207(a)(1).  However, the FLSA provides an exemption from this overtime requirement for persons "employed in a bona fide executive, administrative, or professional capacity."  Id. § 213(a)(1).  Whether an employee is exempt from overtime requirements is a mixed question of law and fact; "[t]he question of how the [employees] spent their working time . . . is a question of fact.  The question of whether their particular activities excluded them from the overtime benefits of the FLSA is a question of law."  Seafoods, Inc. v. Worthington, 475 U.S. 709, 713-14 (1986); see also Walton v. Greenbrier Ford, Inc., 370 F.3d 446, 451 (4th Cir. 2004) ("The

8

determination of whether an employee falls within the scope of a FLSA exemption is ultimately a legal question.").

The FLSA's implementing regulations define an "employee employed in a bona fide administrative capacity" as any employee (1) compensated on a salary or fee basis at a rate of not less than $455 per week; (2) whose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; (3) whose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance. 29 C.F.R. § 541.200(a). The claim that an employee is exempt from overtime is an affirmative defense that must be proven by the defendant by clear and convincing evidence. Clark v. J.M. Benson Co., Inc., 789 F.2d 282, 286 (4th Cir. 1986) (internal quotation marks and citation omitted).

On appeal, Altemus concedes that she met the first prong of the three-pronged executive administrative assistant test. However, she maintains that the district court erred in finding that she met the remaining two requirements. With respect to her "primary duty" as Wood's sole executive assistant, Altemus reiterates her assertion below that personal and family work she performed as Wood's administrative assistant occupied between 75 and 80 percent of her work time. Although

Altemus acknowledges that her affidavit was directly contradicted by the performance reviews prepared by Wood, Altemus insists that she signed the performance reviews "only to indicate receipt." By accepting Wood's unsworn performance reviews, which were contradicted by Altemus' sworn statements in her affidavit, Altemus argues, the district court effectively drew inferences in favor of the wrong party at the summary judgment stage. In addition, Altemus avers that the district court erred in failing to apply the "50 Percent Rule" previously endorsed by this court in Clark v. J.M. Benson Co., Inc., 789 F.3d 282, 286 n.2 (4th Cir. 1986). According to Altemus, deviation from this rule of thumb "required consideration of factual circumstances for which a jury is more appropriate."

We conclude that the district court did not err in finding that Altemus' "primary duty" related to the management of FRIT, rather than Wood's personal tasks. Although Altemus urges us to adhere to the "50 Percent Rule" in assessing whether her primary duty involved the performance of administrative duties related to the management of FRIT, Altemus' reliance upon Clark v. J.M. Benson Co., Inc., 789 F.3d 282 (4th Cir. 1986), is misplaced. Following Clark, we clarified the application of the 50 percent "rule of thumb" in Counts v. S.C. Elec. & Gas Co., stating:

10

> Nothing in the FLSA compels any particular time frame for determining an employee's primary duty. To the extent the regulations refer to time at all, it is only to provide that 'a good rule of thumb [is] that primary duty means the major part, or over 50 percent, of the employee's time.' 29 C.F.R. §§ 541.103, 541.206. . . . [I]n fact, the regulations explicitly state 'time alone, however, is not the sole test,' and that any assessment of primary duty should 'be based on all the facts in a particular case.' Id. It is clear from this language that the primary duty is meant to be assessed by the totality of the circumstances.

317 F.3d 453, 456 (4th Cir. 2003). Indeed, "[e]mployees who do not spend more than 50 percent of their time performing exempt duties may nonetheless meet the primary duty requirement if the other factors support such a conclusion." 29 C.F.R. § 541.700(b).

Under the regulations, "the term 'primary duty' means the principal, main, major or most important duty that the employee performs." 29 C.F.R. § 541.700(a). As the sole administrative assistant to the CEO of FRIT, Altemus managed Wood's calendar, made all necessary travel arrangements, screened incoming phone calls, coordinated Trustees meetings, prepared slides and handouts for meetings, and assisted Wood with his participation in external boards, tasks necessary to ensure the smooth administration of the CEO's office. In addition, as the sole executive assistant to Dawn Becker, General Counsel and COO of FRIT, Altemus scheduled quarterly Trustees meetings, assembled Trustees meetings materials, and

11

filed documents in corporate files. Although Altemus claims that she spent 75 to 80 percent of her time performing personal tasks for Wood, she does not allege that her personal work for Wood supplanted her administrative tasks or that she diverted administrative tasks to other assistants. Altemus worked as the sole executive assistant to both the CEO and COO of FRIT, a company with more than 400 employees. She held this position 100 percent of the time. Although Altemus claims that personal tasks for Wood required a majority of her time, she nonetheless maintained a responsibility to complete her administrative tasks at all times.

Moreover, despite Altemus' attempts to create an issue of material fact with respect to the nature of her work, the district court correctly concluded that Altemus' self-serving affidavit was unsupported by the record, which includes ample evidence of her business-related duties as the sole executive assistant to the CEO of a large company. In light of extensive evidence to the contrary, Altemus' affidavit amounts only to a "scintilla of evidence." Accordingly, the district court did not err in determining that Altemus' "primary duty" involved administrative tasks for the management of FRIT.

With respect to the level of discretion she exercised, Altemus maintains that "in virtually every area of her work, Wood controlled decision making, often to a minute detail."

12

According to Altemus, "Wood told her on a daily basis which tasks to complete and the order in which to complete them." Altemus further disputes the Defendants' description of her duties as Wood's sole executive assistant, maintaining that her duties were "largely clerical, involving the sending out of mailings drafted by Wood, sending out emails, recording dates in a calendar and making lists." Even if she performed some duties that could be regarded as administrative, rather than merely clerical, Altemus contends, "those duties hardly occurred often enough, or consumed sufficient time to trigger an administrative exemption."

We conclude that the district court did not err in finding that Altemus exercised independent discretion as the sole executive assistant to Wood. As previously discussed, the factual assertions in Altemus' affidavit fly in the face of the record as a whole, which establishes Altemus' significant responsibilities as the sole executive assistant to the CEO of a large company. The performance reviews prepared by Wood reflect the high level of independence and discretion Altemus enjoyed. In addition, the fact that Altemus, the only executive assistant supporting the office of the CEO, completed her administrative tasks while Wood was away from the office on business travel approximately 30 percent of the time serves as further evidence of Altemus' exercise of independent judgment and discretion.

13

In addition, Altemus was paid a salary commensurate with her level of responsibility. Altemus' salary was nearly twice that of other non-exempt assistants, taking into account her annual bonus. To determine whether an employee's "primary duty" involves the performance of exempt work, the implementing regulations list a number of factors to consider, including "the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee." 29 C.F.R. § 541.700(a). Thus, the fact that Altemus' salary was significantly higher than all other non-exempt administrative assistants further supports a finding of exempt status. See Lott v. Howard Wilson Chrysler-Plymouth, Inc., 203 F.3d 326, 331 (5th Cir. 2000) (holding that "comparative wages" is part of the analysis to determine whether an employee qualifies under the administrative exemption).

Moreover, as the district court noted, Altemus' high salary itself creates doubt as to whether she falls within the scope of the intended protected class in light of the legislative goals of the FLSA. We have previously emphasized that, "[a]lthough salary alone is not dispositive under the FLSA, . . . the FLSA was meant to protect low paid rank and file employees." Darveau v. Detecon, Inc., 515 F.3d 334, 338 (4th Cir. 2008) (internal quotation marks and citation omitted); see also Counts, 317 F.3d at 456 ("[The] FLSA was meant to protect

14

low paid rank and file employees, not higher salaried managerial and administrative employees who are seldom the victims of substandard working conditions and low wages."). Indeed, the FLSA's implementing regulations state that "[a] high level of compensation is a strong indicator of an employee's exempt status." 29 C.F.R. § 541.601(c). Accordingly, the district court did not err in finding that Altemus fell within the executive administrative assistant exemption under the FLSA. The district court therefore properly awarded the Defendants summary judgment on Altemus' overtime claims.

On appeal, Altemus briefly addresses the district court's denial of her Rule 56(d) motion for additional discovery, stating: "[T]o the extent that the trial court credited any of Defendants' evidence as to which the Plaintiff was denied discovery, the trial court erred in denying Plaintiff the additional discovery discussed in her Rule 56(d) Affidavit before ruling on summary judgment." However, beyond a one-sentence reference to the court's denial of her discovery request, Altemus provides no substantive argument addressing the district court's denial of her discovery request. Therefore, Altemus has forfeited appellate review of this issue. See Fed. R. App. P. 28(a)(9)(A) (appellant's brief must contain "appellant's contentions and the reasons for them"); Edwards v. City of Goldsboro, 178 F.3d 231, 241 n.6 (4th Cir. 1999)

15

("Failure to comply with the specific dictates of [Rule 28(a)] with respect to a particular claim triggers abandonment of that claim on appeal.").

Based on the foregoing, we affirm the judgment of the district court. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED